# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00206-SCT

*CANADIAN NATIONAL/ILLINOIS CENTRAL*
*RAILROAD COMPANY, A CORPORATION*

*v.*

*JAMES WESLEY HALL*

DATE OF JUDGMENT:   10/22/2004
TRIAL JUDGE:   HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED: HINDS COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: CHARLES HENRY RUSSELL, III
         CHARLES T. OZIER
ATTORNEYS FOR APPELLEE: ROBERT M. FREY
         CHRISTOPHER ALLEN KEITH
NATURE OF THE CASE:  CIVIL - PERSONAL INJURY
DISPOSITION:   AFFIRMED - 04/12/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### EN BANC.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1. This is a claim brought by an injured railroad employee pursuant to the Federal

Employer's Liability Act ("FELA"), 45 U.S.C. § 51 (1939). A Hinds County jury found the

railroad liable for damages in the amount of $1,501,907.97, and the railroad timely perfected

an appeal.

### BACKGROUND FACTS AND PROCEEDINGS

¶2. On August 2, 2000, James Wesley Hall was working for his employer, Canadian

National/Illinois Central Railroad Company ("Illinois Central"), as part of a four-man

railroad switching crew, sorting out railroad cars as they arrived in the Jackson Yard ("the

Yard"). Hall had been doing this job for 39 years. Although Illinois Central had safety rule T-740 in effect, which stated that employees must not mount moving locomotives except when necessary, Hall and his co-workers testified that sorting the cars required them to mount (that is, step or jump onto) moving equipment regularly. On this day, the Yard was muddy as a result of periodic rain. Hall testified that this mud was greasy and slippery due to its mixture with rotting feed and oil which regularly leaked from the passing trains. The slippery mud was neither covered with ballast, nor did the Illinois Central provide any facilities for the employees to wash the mixture off their boots. Hall testified that he and other employees complained about the slippery conditions of the Yard, but Illinois Central did nothing to alleviate the condition.

¶3.     In addition to rule T-740, Illinois Central had a general safety rule in effect which directed employees to use their discretion in determining whether or not an activity was safe. The rule further instructed employees to take the time to work safely on the job. Illinois Central issued Hall and other crew members handheld radio devices, which could be used to contact one another or notify an engineer that a crew member was going to mount the moving locomotive, but this was not required. Although there was some testimony that other employees used the radio devices to stop or slow a locomotive in order to get on, it is undisputed that on this occasion Hall did not radio the engineer to stop or slow the locomotive so that he could step aboard.

¶4. Although Hall had successfully mounted a moving locomotive thousands of times a year during his 39-year career, on this occasion his foot slipped off the moving locomotive, causing him to fall and sustain serious leg injuries.[1]

¶5. Hall filed suit pursuant to FELA, claiming that Illinois Central failed to provide him with a reasonably safe work environment. At the close of trial, the jury returned a verdict in favor of Hall in the amount of $1,501,907.97, with no reduction for contributory negligence on the part of Hall. After being denied relief through post-trial motions, Illinois Central appealed.

**ANALYSIS**

¶6. Illinois Central raises seven issues on appeal, which we have consolidated into five. Because Illinois Central seeks reversal of a jury verdict, we must review all factual issues in the light most favorable to and supportive of the verdict. *See **Henson v. Roberts,*** 679 So. 2d 1041, 1045 (Miss. 1996) (citing ***Wells Fargo Armored Serv. Corp.***, 543 So. 2d 154, 157 (Miss. 1989).

---

[1] Illinois Central and the dissent describe Hall's injury as "a broken leg." Hall points out that his injury was much more serious than indicated by Illinois Central and the dissent. Hall states that "both bones in the upper part of [his] leg were 'crushed;' [he] was hospitalized for seventeen days, during which time they 'stretched' his leg out and operated on it, twice, installing two pins the first time and cutting bone the second time." Hall was unable to work and that a year later he had to undergo a third surgery. Hall's doctors have opined that he will eventually have to undergo a fourth surgery to replace his knee.

3

## I. POST-TRIAL MOTIONS

¶7.     The first issue is whether the trial court erred in denying Illinois Central's post-trial motions. At the close of Hall's case-in-chief, Illinois Central moved for a directed verdict, arguing that Hall failed to prove his prima facie case of liability under FELA. The motion was denied by the trial court. Following the entry of judgment upon the jury verdict, Illinois Central filled a motion for a judgment not withstanding the verdict, or in the alternative for a new trial or remittitur. This motion was also denied by the trial court. On appeal, Illinois Central argues that the trial court erred in denying its post-trial motions, which we shall separately review.

### A.

¶8.     At the close of Hall's case-in-chief, Illinois Central moved for a directed verdict arguing that Hall failed to meet his burden of proof under FELA. Illinois Central argued that Hall's four allegations of negligence[2] against Illinois Central were not supported by the evidence. The trial court granted the directed verdict on Hall's claim of inadequate locomotive maintenance and inspection, but denied the motion as to the other claims.

¶9.     Motions for a directed verdict are provided by the rules of civil procedure to allow one party to challenge the legal sufficiency of the other party's case. Miss. R. Civ. P. 50 (a). A

---

[2] The four allegations referred to by Illinois Central during its motion for a directed verdict were each of the allegations made in Hall's interrogatory answers. In his interrogatory answers, Hall alleged that Illinois Central violated the FELA by: (1) requiring employees to mount moving railroad engines; (2) requiring employees to mount moving railroad equipment in bad weather conditions; (3) negligently allowing debris, oil, and other chemical substances to accumulate in the walkways; and (4) failing to properly maintain, inspect, and repair the locomotive engine.

motion for a directed verdict is considered by the court before the verdict is rendered or final

judgment is entered. *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006). This Court

conducts a de novo review of a trial court's grant or denial of a motion for a directed verdict.

*Entergy Miss. Inc. v. Bolden*, 854 So. 2d 1051, 1055 (Miss. 2003). Because the evidence

must be considered in the light most favorable to the non-movant, Hall is entitled to the

benefit of all favorable inferences that may be reasonably drawn from the evidence

presented. *Id.* If there is "substantial evidence in support of the verdict, that is, evidence of

such quality and weight that reasonable and fair minded jurors in the exercise of impartial

judgment might have reached different conclusions, affirmance is required." *Cmty. Bank*

*v. Courtney*, 884 So. 2d 767, 772 (Miss. 2004). Therefore, in order to determine whether the

motion for a directed verdict was properly denied, we must address whether Hall put on

sufficient evidence during his case-in-chief to create a question of fact with which reasonable

jurors could disagree.

¶10.    Hall brought his claim against Illinois Central under FELA. FELA provides in

pertinent part that:

> every common carrier by railroad while engaging in [interstate] commerce .
> . . shall be liable for damages to any person suffering injury while he is
> employed by such carrier in such commerce . . . resulting in whole or in part
> from the negligence of any of the officers, agents, or employees of such
> carrier, or by reason of any defect or insufficiency, due to its negligence, in its
> cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or
> other equipment.

45 U.S.C. § 51. The United States Court of Appeals for the Fifth Circuit has stated that "[t]o

prevail under the Act, a plaintiff must prove that (1) the defendant is a common carrier by

5

railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's negligence." **Smith v. Med. & Surgical Clinic Ass'n**, 118 F.3d 416, 419 (5th Cir. 1997).

¶11. At issue in this case is whether Hall's injuries resulted from Illinois Central's negligence or, more specifically, whether Hall proved that Illinois Central's negligence was the cause of his injuries.

¶12. Illinois Central argues that in order to recover under FELA, Hall must prove the traditional common law elements of a negligence cause of action, i.e. duty, breach, causation and damages. Illinois Central further argues that its duty to Hall under FELA was "to use reasonable care and prudence so that the work place and the appliances furnished are reasonably suitable and safe for the purpose and in the circumstances in which they are to be used."

¶13. The United States Supreme Court has established that FELA supplants an employer's common law duty with a "far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." **Rogers v. Missouri Pac. R.R. Co.**, 352 U.S. 500, 507–08; 77 S. Ct. 443, 449; 1 L. Ed. 2d 493, 500 (1957). Under the statute, the plaintiff's burden of proving causation is *significantly relaxed* compared to the burden in an ordinary negligence action. **Consolidated Rail Corp. v. Gottshall**, 512 U.S. 532, 543; 114 S. Ct. 2396, 2404; 129 L. Ed. 2d 427 (1994). The question is "whether

6

negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." **Rogers**, 352 U.S. at 508.

¶14.    In this case, the jury considered Hall's claim that Illinois Central failed to provide a reasonably safe work environment by (1) allowing employees to mount moving equipment; (2) allowing Hall to mount moving equipment when it had been raining; and (3) allowing the Yard to accumulate mud and oil on its walkways.[3]  In support of its motion for a directed verdict, Illinois Central argued that Hall failed to prove his work environment was not reasonably safe, as required under FELA.  However, giving Hall the benefit of all favorable inferences that may be reasonably drawn from the evidence, and considering the relaxed burden of proving causation, we find that the trial court did not err in denying Illinois Central's motion for a directed verdict.

¶15.    Hall's evidence sufficiently created a question of fact as to whether Illinois Central failed to provide a reasonably safe work environment.  Hall testified that on the day of his injury, he was acting in accordance with his training and in compliance with Illinois Central's safety rules, which required him to mount moving locomotives.  Furthermore, William "Bubba" Kearn, ("Kearn") Hall's co-worker, testified that it was part of his job at Illinois Central to mount moving locomotives. As to Hall's first claim of negligence, concerning Illinois Central's practice of allowing employees to mount moving equipment, Hall's expert, Dennis Berquist ("Berquist"), testified that Illinois Central was negligent in maintaining

---

[3]Hall failed to put on any evidence with regard to his claim that Illinois Central failed to maintain the locomotive, therefore, the trial court granted a directed verdict as to this claim.

7

safety rules which allowed its employees to mount and dismount moving locomotives. Berquist further testified that a majority of the major railroads had enacted safety rules prohibiting the mounting and dismounting of moving locomotives due to the dangers involved and the high number of accidents occurring during such activity.

¶16.  Hall testified in support of his second claim that he was required to mount moving locomotives in the rain, and that the rain caused a slippery mud to form in the Yard, which accumulated on the workers' boots.  Kearn also testified to the same.  Sufficient testimony was also presented regarding Hall's third claim.  Hall and Kearn both testified as to the slippery conditions which formed on the walkways in the Yard.  Further testimony indicated that complaints were made to the Railroad regarding these slippery conditions, but nothing was done to remedy the potential hazzard.  Additionally, photographs of the walkways were also admitted into evidence.

¶17.  Taking into consideration the evidence presented during Hall's case-in-chief, we find that there was enough evidence to create a question of fact with regard to Illinois Central's alleged negligence.  Therefore, we find that the trial court did not err in denying Illinois Central's motion for a directed verdict.

**B.**

¶18.  Illinois Central further argues that the trial court erred in denying its motion for a J.N.O.V., or in the alternative a new trial.  Similar to its claim that it was entitled to a directed verdict, Illinois Central argues that the evidence presented did not establish liability against it, and, therefore, the jury verdict should be overturned.  A motion for a J.N.O.V. tests the

8

sufficiency of the evidence, while a motion for a new trial test the weight of the evidence. ***Bush v. State***, 895 So. 2d 836, 843–44 (Miss. 2005).

¶19. Although similar to a motion for a directed verdict, a motion for J.N.O.V. allows the trial judge an opportunity to set aside the jury's verdict and enter a judgment as a matter of law. Miss. R. Civ. P. 50 (b). Our standard for review of a denial of a motion for J.N.O.V. is the same as that for motions for a directed verdict. The evidence is considered "in the light most favorable to the appellee, giving the appellee the benefit of all reasonable inferences that may reasonably be drawn from the evidence." ***Miss. Transp. Comm'n v. SCI, Inc.***, 717 So. 2d 332, 338 (Miss. 1998). If there is substantial evidence in support of the verdict, affirmance is required. ***Id.***

¶20. Illinois Central focuses its argument on Hall's admission during cross-examination that he did not know what caused his foot to slip, and on Berquist's testimony that Illinois Central violated industry standards by allowing its employees to mount moving locomotives. More specifically, Illinois Central argues that Hall's admission was fatal to his claims that Illinois Central was negligent in allowing employees to mount moving equipment in the rain and in maintaining slippery and unsafe walkways. It further claims that Berquist's testimony was insufficient to establish either that Illinois Central violated industry customs and standards, or that the practice of mounting moving equipment could not be done in a reasonably safe manner. Therefore, Illinois Central asks this Court to either render a verdict in its favor on all of Hall's claims, or remand the case for a new trial.

9

¶21.    Hall admitted during cross-examination that he was speculating as to whether his boots contained the slippery substance at the time of the accident.  This admission, however, is not fatal to Hall's claim.  Evidence in the record clearly established that, on the day of the accident, it had been raining and the muddy substance was on the ground.  The evidence further established that Hall was walking in the Yard during this period of time, and that there was no facility to clean his boots.  These facts created sufficient circumstantial evidence for the jury to find that Hall's boots indeed had mud on them at the time of the accident.

¶22.    Furthermore, a party's admission that he or she does not know whether a particular fact is true is far different from an admission that the fact is not true.  Our rules of civil procedure employ only one device whereby a jury is required to accept as true or false a particular matter.  That is, where a party admits a matter in response to a request for admissions, that matter is "conclusively established," and the judge will instruct the jury as such.  *See* Miss. Rule Civ. Pro. 36 (b).  That is not the case here.

¶23.    Furthermore, the dissent fails to fully appreciate the testimony of Chad Bishop, Hall's co-worker who witnessed the accident.  The dissent states that Bishop "testified he didn't recall seeing any mud, limestone, or other slippery condition on the soles of Hall's boots." Bishop, however, when asked whether he had the opportunity to observe Mr. Hall's boots while he was lying on the ground, answered, "Not really. I saw his boots but I didn't really observe them."

¶24.    Thus, the critical question is not whether Hall was personally aware of the mud on his boots, but rather whether, in viewing the record as a whole, there was sufficient evidence presented to allow a reasonable juror to conclude that Illinois Central was negligent.

¶25.    In answering this question, our analysis is identical to the above analysis regarding the denial of the motion for a directed verdict. Illinois Central does not claim that any evidence or testimony produced during its case-in-chief caused Hall's claims to fail. Rather, Illinois Central focuses on the testimony and evidence produced during Hall's case-in-chief. Therefore, finding it unnecessary to re-analyze the evidence presented in support of Hall's claims, we find that, as to his claim of negligence, Hall produced sufficient evidence for the jury to consider, and the trial court did not err in denying the motion.

**C.**

¶26.    With regard to motions for a new trial, this Court has held:

> In contrast to judgments as a matter of law, the motion for a new trial exists for an entirely different purpose. Accordingly, a new trial becomes appropriate when a trial court determines that error within the trial mechanism itself has caused a legally incorrect or unjust verdict to be rendered. The motion for a new trial affords the trial courts with an alternative to a grant of a JNOV, and provides judges with the opportunity to remedy trial error before an appeal is commenced. Whether jury error or otherwise, our law has long recognized the importance of this remedial device.

*White*, 932 So. 2d at 33. Trial courts have the authority to set aside a jury verdict when the verdict is contrary to the substantial weight of the evidence, but if the jury verdict is supported by the substantial weight of evidence, it should not be set aside. *Id.* Cases arising under FELA are to be left to the jury, and a jury's verdict can only be set aside "when there

11

is a complete absence of probative facts" to support it. ***Dennis v. Denver & Rio Grande W. R.R. Co.***, 375 U.S. 208, 210; 84 S. Ct. 291; 11 L. Ed. 2d 256 (1963). Arguing that the evidence presented at trial does not support the jury verdict, Illinois Central asks this Court to remand this case for a new trial.

¶27. Again, a repetition of the evidence presented in support of Hall's claims of negligence is unnecessary. The jury returned a verdict in favor of Hall in the amount of $1,501,907.97, and we cannot say that this verdict was against the overwhelming weight of the evidence. Therefore, the trial court was correct in denying Illinois Central's motion for a new trial.

## II. EXPERT TESTIMONY

¶28. Illinois Central next asserts several assignments of error associated with Hall's expert, Berquist, including Berquist's qualifications to testify as an expert, material referenced in the expert's testimony that was not produced in discovery, and the relevance of the expert's testimony and opinion. We examine each of these in turn.

### A.

¶29. When reviewing a trial court's decision to allow or disallow evidence, including expert testimony, we apply an abuse of discretion standard. ***Webb v. Braswell***, 930 So. 2d 387, 396–97 (Miss. 2006). Furthermore, a trial court's decision to allow expert testimony will be reversed only upon a showing of prejudice to Illinois Central. ***Jones v. State***, 918 So. 2d 1220, 1223 (Miss. 2005).

12

¶30. In 2003, this Court amended Rule 702 of the Mississippi Rules of Evidence, placing with the trial court the gatekeeping responsibilities of evaluating the admissibility of expert testimony. Rule 702 now states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) their testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

¶31. Since the amendment, we have stated that "[w]e are confident that our learned trial judges can and will properly assume the role as gatekeeper on questions of admissibility of expert testimony." *Miss. Trans. Comm'n v. McLemore*, 863 So. 2d 31, 40 (Miss. 2003) (adopting the *Daubert* test concerning expert testimony). The two-prong test applied by this Court examines both the relevance and the reliability of expert testimony. *Jones*, 918 So. 2d at 1227.

¶32. In this case, the record reflects that during pre-trial motions, the trial judge heard arguments from both Illinois Central and Hall regarding Berquist's qualifications under Rule 702. After hearing arguments from both sides, Illinois Central informed the trial judge that it would voir dire Berquist on his qualifications when Hall put him on the stand. Based on this information, the trial judge reserved his ruling on the motion *in limine* until that time.

¶33. During his direct examination, Berquist testified that he first became involved in the railroad industry in 1960, and worked as a claim agent until 1973. Part of his job as a claim agent was to be familiar with the safety rules of the railroad, because in investigating

13

accidents, an investigator must know whether or not there was compliance with the safety rules. Following a major accident, his job required him to train and educate employees regarding safety rules.

¶34. Berquist started a railroad safety consulting business in 1982 and has worked with attorneys, insurance companies, state transportation departments, and private industries on the topic of railroad safety regulations since then. Furthermore, Berquist indicated that he had been qualified as an expert to testify as to the application of railroad safety rules and accident prevention in various states throughout the country. In addition, Berquist testified that he is a founding member of the National Association of Railroad Safety Consultants and has attended and given presentations at various educational seminars.

¶35. After Hall offered Berquist as an expert, Illinois Central proceeded to voir dire him as to his qualifications. At the conclusion of this examination, Illinois Central argued that Berquist did not qualify as an expert witness under Rule 702. Specifically, Illinois Central argued that Berquist's work experience as a claims investigator did not involve any experience as a conductor, brakeman or switchman. Furthermore, Illinois Central argued that Berquist had essentially self-educated himself regarding the safety of mounting moving equipment by reading safety rules and studying information compiled from the Internet. Hall's counsel clarified that Berquist was not being offered to testify as to the actions of the switching crew, but was instead being offered to testify as to the railroad industry's operating and safety rules and how Illinois Central failed to comply with those standards.

14

¶36.    Taking into consideration the direct testimony of Berquist, Illinois Central's voir dire of Berquist and its motion *in limine*, the trial judge denied Illinois Central's motion *in limine* and allowed Berquist to testify as to the operation of safety rules in the railroad industry.  In applying **Daubert** to the facts of this case, we cannot say that the trial judge abused his discretion in allowing Berquist to testify as an expert in the field of operating and safety rules.

**B.**

¶37.    Illinois Central also argues that the trial court committed reversible error by allowing Berquist to reference certain material not provided in discovery.  During his trial testimony, Berquist referenced a booklet published by the Federal Railroad Administration ("FRA") containing statistical data on actual causes of railroad accidents.  Berquist provided an opinion of why the practice of mounting and dismounting moving locomotives was abandoned by a majority of the major railroads.  Illinois Central argues on appeal that Hall failed to disclose any of this information during discovery, thereby committing a "blatant discovery violation which alone requires reversal of the jury verdict."

¶38.    During pre-trial discovery, Illinois Central propounded an interrogatory asking Hall to identify all experts Hall planned to call as witnesses at trial, the subject matter on which each expert would testify, the substance of the facts and opinions to which each expert would testify, and the summary of the grounds for each expert opinion.  Although Hall did not identify Berquist in its response to the interrogatory, he later provided Illinois Central with an expert report authored by Berquist.  The report indicated that the practice of mounting and

dismounting moving equipment was once an accepted practice, but more recently, railroads were issuing rules prohibiting the practice. The report further disclosed Berquist's opinion that Illinois Central was negligent in failing to provide Hall with reasonably safe and adequate rules for the performance of his work. The report did not specifically state Berquist's opinion as to why the major railroads changed their safety rules with regard to mounting and dismounting equipment, nor did the report indicate that Berquist would reference a booklet published by FRA containing statistical data of railroad accidents.

¶39.  During Berquist's direct examination, counsel for Hall asked Berquist how the railroad industry reacted to the standard of allowing people to mount and dismount moving equipment. When Berquist began to answer that over the years a lot of people were getting hurt, counsel for Illinois Central objected, stating "I don't think the witness has shown he has personal knowledge of this other than the two railroads he worked for." Although the record reflects several other objections to this line of questioning, no objections were made regarding an alleged discovery violation.

¶40.  Furthermore, when Berquist was asked during direct examination what documentation he reviewed that showed him what was occurring when employees were mounting and dismounting moving equipment, he answered that he reviewed a booklet published by the FRA containing statistics on railroad accidents. The record reflects that just prior to Berquist referencing the FRA material, counsel for Illinois Central objected to the answers by Berquist as hearsay. The attorneys were asked to approach the bench, at which time a bench discussion ensued. Presumably, this is the only possible time that Illinois Central may

16

have objected to the FRA material, however, there is no statement on the record regarding what objections might have been made during this bench conference. Other than the bench discussion, no other objections to the FRA material were made during the trial.

¶41. In fact, on cross-examination, the following exchange took place between Berquist and counsel for Illinois Central regarding the FRA material:

Defendant's Attorney: Okay, sir. Now you also referred to an FRA report that was issued in 1988 concerning employee injuries. Do you recall that testimony?

Berquist: I referred to FRA materials from '88 through actually, I don't think I said "88. I should have said '98 if I said '88.

Defendant's Attorney: Okay.

Berquist: Now there was material back in the 80's, but it wasn't as well-defined as the more current material.

Defendant's Attorney: Well, does that report -- do you have that report with you?

Berquist: I have the 80's material with me. I don't think I have that material that goes back in the earlier years than the '88 materials. I can take a look but I rather doubt it. No, I don't see that earlier material with me.

Defendant's Attorney: Okay. So you don't have that material with you here today.

Berquist: No, sir.

Defendant's Attorney: That's all I have, Your Honor, Thank You.

¶42. Illinois Central failed to properly object to Berquist's testimony regarding reasons why the major railroads were amending their safety rules and to Berquist's reference to statistical information from the FRA booklet. Thus, we find that Illinois Central is now

17

procedurally barred from arguing on appeal that the trial court committed reversible error by allowing this evidence to be admitted. *Cotton v. State*, 675 So. 2d 308, 314 (Miss. 1996) (finding that when objection is made during bench conference, the complaining party must preserve the record for appeal to avoid being procedurally barred); *Fleming v. State*, 604 So. 2d 280, 294 (Miss. 1992) (holding the absence of a timely objection causes defendant to be procedurally barred from asserting the alleged error on appeal).

¶43. Procedural bar aside, our rules of civil procedure require that a party must disclose the name of each expert expected to be called as a witness at trial, the subject matter on which each expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. Miss. R. Civ. P. 26(b)(4)(A)(I). When a discovery violation occurs, one of the sanctions available under our rules of civil procedure is "an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." Miss. R. Civ. P. 37(b)(2)(B). This Court has stated that "[a]n expert should not be allowed to testify concerning a subject matter which is not included in the response to the interrogatory," and allowance of such would be reversible error. *Buskirk v. Elliott*, 856 So. 2d 255, 264 (Miss. 2003).

¶44. Compliance with the rule involves a fact-intensive comparison between the subject matter contained in discovery responses and the subject matter of the testimony given by the expert at trial. *Id.* This Court has found discovery violations and subsequent exclusion of expert testimony to be proper when the experts testified as to a subject matter different from

18

the subject matter contained in discovery responses. *See, e.g., Coltharp v. Carnesale*, 733 So. 2d 780, 786 (Miss. 1999) (trial court committed reversible error by admitting expert testimony supporting additional theory of plaintiff's injury not revealed during discovery); *T.K. Stanley Inc. v. Cason*, 614 So. 2d 942, 950–51 (Miss. 1992) (trial court erred in admitting expert testimony regarding permanent disability, as it was a separate subject matter from causation). However, this Court has established that "where the stated subject matter in the response necessarily includes the subject matter testified to at trial, it is an abuse of discretion to exclude the expert's testimony." *Buskirk*, 856 So. 2d at 264.

¶45.    In this case, the alleged discovery violations include testimony regarding reasons why the major railroads were amending their safety rules and Berquist's reference to statistical information from the FRA booklet. As stated previously, Berquist's expert report stated that a majority of the major railroads had changed their safety rules regarding the mounting and dismounting of moving equipment in recent years. Therefore, this Court finds that the subject matter contained in Berquist's expert report (that major railroads were changing their safety rules regarding the mounting and dismounting of moving equipment) included the subject matter Berquist testified to at trial (reasons why major railroads were amending their safety rules).[4]

---

[4] Berquist limited his discussion regarding safety rules to "major railroads," which he stated did "the majority of the railroading in the United States." Illinois Cental is considered one of the "major railroads." Berquist further testified that the small railroads, of which there are around 400, typically adopt the safety rules of the nearest major railroad.

¶46.    Accordingly, the discovery violation arguments made by Illinois Central do not require a reversal of the jury verdict.

**C.**

¶47.    Illinois Central also argues that Berquist's testimony and opinions were not relevant. However, we find no evidence in the record (either in Illinois Central's motion *in limine*, arguments at trial or post-trial motions) that Illinois Central objected to the *relevance* of Berquist testimony.   Only now on appeal does Illinois Central argue that Berquist's testimony was not relevant.  Thus, Illinois Central is procedurally barred from raising this argument on appeal.  *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1060 (Miss. 2005) (holding that this Court does "not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the brief").  Procedural bar aside, we find little merit to the argument that the testimony was not relevant.

### III.  CONTRIBUTORY NEGLIGENCE

¶48.    Illinois Central next argues that the jury's failure to attribute contributory negligence to Hall was against the overwhelming weight of the evidence.  Illinois Central contends that the evidence showed that Hall was guilty of contributory negligence because he: (1) failed to exercise reasonable care under the circumstances by not checking the bottom of his boots or the ground condition prior to mounting the moving locomotive, (2) failed to radio the engineer to stop or slow the locomotive prior to the incident, and (3) failed to comply with Illinois Central's safety rules.

¶49.    Under FELA, the employee has a duty to exercise ordinary care under the circumstances. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338 (5th Cir. 1997). Illinois Central had the burden of proving that Hall failed to exercise ordinary care under the circumstances. When reviewing a claim that a jury verdict was contrary to the overwhelming weight of the evidence, we must accept as true the evidence that supports the verdict, and we will reverse when convinced that the circuit court has abused its discretion. *Watson v. State*, 722 So. 2d 475, 480 (Miss. 1998).

¶50.    Illinois Central's counsel elicited testimony from Hall that he did not check his boots prior to mounting the locomotive. Also, Kearn testified that when he got mud on his boots, he would scrape the bottom of his boots off on a seal step to get the excess mud off. However, both Hall and Kearn testified that when it rained, a slippery mud would form in the Yard which would accumulate on the workers' boots, which could only be removed by washing the boots with water. Hall also testified that he had been walking through the mud all day on the day of his accident. Additionally, the jury was allowed to view photographs of the muddy walkways. Hall testified that, despite the rain, employees did not stop and check their boots before mounting a moving locomotive, although this could be a safe practice.

¶51.    Illinois Central also claims that Hall was negligent in failing to radio the engineer to instruct him to stop or slow the locomotive before he attempted to mount. Illinois Central put on testimony from Chad Bishop ("Bishop"), Hall's co-worker, who stated that he had used his radio to slow or stop a locomotive in order to embark. Illinois Central also elicited

21

testimony from Tom Evans ("Evans"), who stated that the normal procedure would be for an employee to radio the engineer when he is about to mount the moving locomotive.

¶52.    On the other hand, Hall produced evidence to the contrary. Kearn testified that it was not customary practice for employees to radio an engineer and tell them to stop or slow down prior to mounting the locomotive. Also, Hall testified that during his 39-year career, he never used his radio to tell an engineer to slow down or stop because he was trained to catch the engine. No evidence was presented that radioing an engineer prior to mounting the moving locomotive was required.

¶53.    Illinois Central also claims that Hall was negligent because he failed to comply with Illinois Central's safety rules which instructed employees to use experience, intelligence, common sense and knowledge of safety rules in determining whether an activity is safe. Further, rule T-740 stated that employees must not mount moving locomotives except when necessary and must not attempt to get on or off equipment moving at an unsafe speed. Illinois Central offered the testimony of Hall's co-worker, Bishop, who testified that rule T-740 placed restrictions on employees mounting equipment moving at an unsafe speed. Bishop further testified that employees were to utilize Illinois Central's general safety rule, always using common sense in the performance of their job. Hall testified, however, that on the day of the accident, he was acting in compliance with Illinois Central's safety rules and in accordance with his experience and training.

¶54.    The evidence produced at trial was not overwhelmingly in favor of either side. We have never held that violation of a safety rule constitutes negligence per se. Such questions

22

are for the jury.  Thus, we find the jury's rejection of Illinois Central's contributory negligence claim was not contrary to the overwhelming weight of the evidence.

## IV.  JURY INSTRUCTIONS

¶55.    Illinois Central next claims that the trial court erred in refusing to instruct the jury concerning fact-specific claims of contributory negligence[5] and  in instructing the jury that they could find for Hall on multiple claims of negligence.  Following the evidentiary phase of the trial, Illinois Central requested that the court grant two jury instructions regarding its claims of Hall's alleged contributory negligence.  The two jury instructions were D-8A and D-13.  Proposed instruction D-8A would have, in a very detailed and fact-specific manner, instructed the jury that Hall had a duty to exercise reasonable care.  Proposed instruction D-13 would have instructed the jury to consider a violation of company safety rules in determining whether or not Hall was negligent.  Proposed instruction D-8A was modified by the court and presented to the jury, while proposed instruction D-13 was rejected.

¶56.    Further, Hall proposed jury instruction P-1,[6] which instructed the jury to find in favor of Hall if the jury found that Illinois Central failed to exercise reasonable care in providing

---

[5]Although Illinois Central refers to its claims regarding Hall's alleged negligence as "contributory negligence" claims, Mississippi law employs a "pure comparative negligence" system. Miss. Code Ann. § 11-7-15 (Rev. 2004).

[6]Although the dissent finds the trial court erred in not granting Plaintiff's proposed instruction P-10, this instruction is not an issue on appeal.  Proposed instruction P-10 was denied by the trial court.

23

a reasonably safe place for Hall to work, as required by FELA. Hall's proposed instruction P-1 was slightly modified[7] and given to the jury.

## A.

¶57. We have established the following standard of review for challenges to jury instructions:

> The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. A defendant is entitled to have jury instructions given which present his theory of the case. This entitlement is limited, however, in that the Court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Spicer v. State*, 921 So. 2d 292, 313 (Miss. 2006) (*citing Parks v. State*, 884 So. 2d 738, 746 (Miss. 2004)). Therefore, in reading the jury instructions as a whole, this Court must determine whether the jury was properly instructed. *Burton v. Barnett*, 615 So. 2d 580, 583 (Miss. 1993). Even if one specific instruction arguably is faulty, "[d]efects in specific instructions do not require reversal 'where all instructions taken as a whole fairly - although not perfectly - announce the applicable primary rules of law.'" *Id.* (*citing Payne v. Rain Forrest Nurseries, Inc.*, 540 So. 2d 35, 40 (Miss. 1989)).

¶58. Illinois Central requested that the trial court grant proposed jury instruction D-8A, which stated:

> The Plaintiff, James Wesley Hall, had a duty to exercise reasonable care for his own safety while he was working at the Illinois Central Railroad Company

---

[7]The court struck the word "unsafe" as used by Hall in the proposed instruction P-1 and substituted the word "not reasonably safe."

facility. Put another way, James Wesley Hall was responsible for exercising ordinary care under the circumstances existing at the time of Plaintiff's accident. Such circumstances include the Plaintiff's experience, weather conditions, ground and footing conditions, locomotive speed, and the normal and customary procedures and practices when mounting moving locomotives. The Court further instructs the jury that if you find from a preponderance of the evidence that the Plaintiff, James Wesley Hall, while attempting to mount a moving locomotive, failed to exercise reasonable care for his own safety in attempting to mount a moving locomotive under the existing circumstances, then the Plaintiff was guilty of negligence. If you further find from a preponderance of the evidence that such negligence, if any was the sole cause of the accident in question and the Plaintiff's injuries, then it will be your sworn duty to return a verdict for Defendant Illinois Central Railroad Company.

¶59. Illinois Central argued that this instruction was necessary to properly instruct the jurors that, if they found Illinois Central was not negligent and Hall was solely responsible for his injuries, then the jury must return a verdict in its favor. Illinois Central also argued that the instruction connected the specific facts of this case with the law, and instructed the jury on what to consider in determining whether Hall was exercising reasonable care under the circumstances.

¶60. Conversely, Hall argued the instruction was properly denied because it failed to instruct the jury of Illinois Central's burden of proof, and further failed to address comparative negligence.

¶61. The trial judge decided that the proposed instruction would be modified and given. The instruction, as modified, stated:

The Court instructs the Jury that the Plaintiff, James Wesley Hall, had a duty to exercise reasonable care for his own safety while he was working at the Illinois Central Railroad Company facility. The defendant has the burden of proof on this issue.

25

¶62. On appeal, Illinois Central argues that the trial court committed reversible error by modifying the instruction. Specifically, Illinois Central states that the instruction, "as modified by the Court and read to the jury, was a blanket, abstract, boilerplate, jury instruction on a mere legal principle, which was unrelated to the facts and evidence at trial and the issues of the case." Illinois Central points out that this Court has instructed Mississippi trial courts that jury "instructions should be tied to the specific facts of the case and when given merely in the abstract, *may be grounds* for error." *A.B. McCarty v. Kellum, M.D.*, 667 So. 2d 1277, 1287 (Miss. 1996) (emphasis added).

¶63. Illinois Central's argument as to proposed jury instruction D-8 fails for several reasons. First, *McCarty* does not stand for the proposition that a trial court's giving of abstract instructions to the jury constitutes *reversible error*. In fact, in *McCarty*, this Court cautioned trial courts not to give abstract instructions, but later held that in reviewing the instructions *in toto*, the jury was provided with the appropriate facts and standards. 667 So. 2d at 1287. This Court, therefore, found the abstract instruction issue in *McCarty* to be without merit. *Id.* Contrary to the assertion by the dissent that the denial of D-13 and modification of D-8A caused "ICR's theory of the case [to be] totally disallowed in the jury instructions," Illinois Central's theory of the case was adequately presented when viewing the jury instructions *in toto*. Reading the jury instructions as a whole, Illinois Central's theory of Hall's contributory negligence was adequately presented to the jury through various other jury instructions, including jury instruction 17 (stating that Hall had a duty to exercise reasonable care for his own safety), jury instruction 18 (instructing the jury to consider the

26

negligence of both Illinois Central and Hall and assign a percentage of fault, if any, to each) and jury instruction 22 (a special interrogatory form presented to the jury to find whether Hall was negligent and whether such negligence contributed to his injuries). Therefore, we cannot find that the trial judge abused his discretion in denying proposed jury instruction D-8A.

¶64.    Illinois Central also proposed jury instruction D-13, which would have instructed the jury as follows:

> The Court instructs the jury that the Defendant, Illinois Central Railroad Company, has adopted safety rules for the conduct and safety of its employees in the performance of their duties and their work. The Court further instructs the jury that you may consider the violation of company safety rules in determining whether or not the Plaintiff was negligent at the time of the accident in question.

> Illinois Central Railroad Company Safety Rule T-740(b), states: "Employees must not: . . . b) Attempt to get on or off when equipment is moving at unsafe speed."

> The Court instructs the jury that if you find from a preponderance of the evidence that the Plaintiff violated either of the foregoing safety rule[s], you may consider the violation of such rule by the Plaintiff, together with all of the facts and circumstances and evidence, in determining whether or not the Plaintiff was negligent at the time of the accident. If you further find from a preponderance of the evidence that such violation of the Defendant's safety rules, if any, was negligence and was the sole cause of the accident in question and the Plaintiff's injuries, then it would be your sworn duty to return a verdict for the Defendant Illinois Central Railroad Company.

¶65.    Illinois Central argued before the trial court that instruction D-13 was needed in order to instruct the jury on its theory that Hall's violation of T-740 provided evidence of Hall's negligence. On the other hand, Hall argued that the instruction did not adequately state the

27

law because it did not specify that an alleged violation of a safety rule does not prove negligence on the part of Hall, but is merely a factor. The trial judge later refused proposed jury instruction D-13 without explanation.

¶66. Illinois Central argues that D-13 was supported by the evidence and was the only instruction covering Hall's alleged violation of the safety rules and, therefore, the trial court erred in denying the instruction. Hall argues, however, that the trial court did not abuse its discretion in refusing to grant D-13, but merely followed the ranks of many courts that have refused to give effect to safety rules allegedly broken by the injured employee.

¶67. A review of proposed instruction D-13 evidences that the trial judge did not abuse his discretion in denying the instruction. Although not specifically addressed by the parties, we find that the evidence did not support a giving of D-13. D-13 asked the jury to consider whether Hall violated T-740, which instructed employees not to mount equipment moving at an unsafe speed. There was *no* testimony that the train in question was moving at an unsafe speed at the time of the accident. The dissent even notes that "Hall admitted that the locomotive was traveling at a safe speed." Our case law is clear that jury instruction must be supported by the evidence. *See **Burr v. Miss. Baptist Med. Ctr.***, 909 So. 2d 721, 726 (Miss. 2005) (the defense is entitled to jury instructions which present its theory of the case, *if supported in the evidence*.).

¶68. Furthermore, the first sentence of instruction D-13 is a statement of fact (that Illinois Central has adopted safety rules), to which Illinois Central was entitled to put on evidence showing whether or not such fact was true. The second sentence, (that the jury may consider

safety rules), merely points to a specific piece of evidence for the jury to consider and is repetitive of previous instructions. The jury was instructed to "carefully scrutinize . . . every matter in evidence," and this sentence merely repeats that instruction, by pointing to a specific piece of evidence for the jury to consider. Lastly, there was no entitlement to an instruction that pointed special attention to T-740. A specific reference to T-740 would be more appropriate during closing arguments, where the attorneys fairly sum up the arguments and point to specific facts presented which support their case. **Spicer v. State**, 921 So. 2d 292, 309 (Miss. 2006). Accordingly, we find that Illinois Central was not entitled to D-13 and the trial judge did not abuse his discretion in denying the instruction.

**B.**

¶69. Illinois Central next claims that the trial court erred in giving instruction P-1, which stated:

> In this case the Plaintiff's claims are asserted under the Federal Employers' Liability Act. The Federal Employers' Liability Act (known as the F.E.L.A.) provides that every common carrier by railroad, while engaged in commerce between any of the several states, shall be liable in damages to any of its employees who are injured as a result of negligence by the railroad.
>
> In this case the Plaintiff claims that the Defendant failed to exercise reasonable care, as required by the Federal Employers Liability Act, to provide him with a reasonably safe place in which to work. Specifically, the Plaintiff claims the following:
> (1) That Defendant's policy and rules regarding the mounting of moving Railroad equipment was not reasonably safe; or
> (2) That Defendant failed to promulgate or enact safety rules making the work environment reasonably safe; or

29

(3)    That Defendant's policy and rules regarding the mounting of moving Railroad equipment in inclement weather conditions was not reasonably safe; or

(4)    That Defendant failed to provide Plaintiff with reasonably safe walkways and reasonably safe walking conditions to utilize when mounting moving Railroad equipment;

In order to prevail on this claim the Plaintiff must prove each of the following by a preponderance of the evidence:

First: That the Defendant Railroad was "negligent" as claim by the Plaintiff; and

Second: That such negligence was a "legal cause" of damage sustained by the Plaintiff.

The first issue for you to consider under the Federal Employers Liability Act claim is whether the Defendant, or any of its employees other than the Plaintiff, was "negligent" and if so, whether such negligence was a "legal cause" of any damages sustained by the Plaintiff.

¶70.    Illinois Central argues on appeal that Hall testified that the only claim of negligence he had evidence to support was his allegation that Illinois Central's practice of allowing employees to mount and dismount moving equipment was inherently unsafe. Therefore, Illinois Central argues, the trial court erred by allowed jury instruction P-1, which allowed the jury to find for Hall on other claims of negligence, specifically, Hall's claims that Illinois Central was negligent in failing to provide safe walkways and walking conditions. Hall points out, however, that there was sufficient evidence presented at trial in support of his other claims of negligence.[8] We agree. As stated earlier, a party does not concede an issue or waive a claim, simply because the party cannot establish the claim from personal

_____

[8] As discussed previously, testimony was presented from both Hall and Kearn regarding the muddy and slippery conditions of the yard during and after rainfall. Additionally, photographs of the muddy yard were admitted into evidence.

30

knowledge. The pertinent question is whether the evidence, taken as a whole, provides a sufficient basis for the claim.

¶71. Jury instructions should be granted only where some supporting evidence has been presented. *Bolden*, 854 So. 2d at 1057. A review of the record, including Hall's testimony regarding the condition of his boots on the day of the accident, reveals that the entirety of jury instruction P-1 was supported by the evidence presented. Thus, this issue is without merit.

## V. LAY WITNESS TESTIMONY

¶72. Finally, Illinois Central argues that the trial court committed reversible error by allowing Hall's lay witness to testify as to the safety of the locomotive. Prior to trial, Illinois Central filed a motion *in limine* seeking to preclude Hall's expert from offering testimony regarding locomotive design, arguing that such testimony was an impermissible attempt to regulate train design, which is precluded by the Federal Locomotive Inspection Act ("FLIA").[9] 49 U.S.C. § 20701. This motion was granted by the trial court.[10] At trial, Hall's co-worker, Kearn, testified that it was easier to mount a "switching" locomotive than a "road" locomotive. After several objections by Illinois Central regarding this line of questioning, the trial court allowed the line of questioning to continue. Illinois Central

---

[9]This Act was formerly known as the "Boiler Inspection Act" and is still referenced as such in some cases.

[10]The record indicates that the trial court did not rule on the merits of this motion, but rather, Hall's counsel did not dispute the motion and indicated that he would not be putting on any evidence about nonskid paint.

31

argues that this testimony violates FLIA jurisprudence. In reviewing a trial court's decision to allow or disallow evidence, this Court uses and abuse of discretion standard of review. *Webb*, 930 So. 2d at 396–97.

¶73. Compliance with FLIA requires that a locomotive only be used when the locomotive and its parts "(1) are in proper condition and safe to operate without unnecessary danger of personal injury; (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and (3) can withstand every test prescribed by the Secretary under this chapter." 49 U.S.C. § 20701. FLIA confers upon the Interstate Commerce Commission the duty to inspect locomotives, as well as prescribe the rules and regulations for determining fitness of locomotives. *Napier v. Atl. Coast Line R.R. Co.*, 272 U.S. 605, 612; 47 S. Ct. 207, 209; 71 L. Ed. 432, 438–39 (1926). This, therefore, excludes state regulation of safety appliances, parts and appurtenances of locomotives. *Id.* at 613. The United States Supreme Court has indicated that in passing FLIA, Congress intended the Act to occupy the entire field of regulating locomotive equipment. *Id.* at 611.

¶74. While it is clear that FLIA preempts any state regulation of locomotive design, a majority of courts have also found that FLIA preempts common law actions against locomotive operators and locomotive manufacturers. *See, e.g., In re W. Va. Asbestos Litigation*, 592 S.E.2d 818, 822 (W. Va. 2003) (holding asbestos claim against railroad preempted by the FLIA); *General Motors Corp. v. Kilgore*, 853 So. 2d 171, 176 (Ala. 2002) (finding plaintiff's common law claim against railroad manufacturer to be preempted by

FLIA); *Scheiding v. General Motors Corp.*, 993 P.2d 996, 1002 (Cal. 2000) (finding FLIA preempts employees products liability claim against locomotive manufacture). Therefore, Illinois Central correctly sought a motion *in limine* to prevent Hall from asserting any claims as to the train's design.

¶75. Contrary to Illinois Central's argument, however, we find no violation of FLIA in Kearn's testimony. When asked to describe a switch engine, Kearn testified that a switch engine is an engine specifically built to switch cars, as opposed to a road engine, which is built differently. He further testified that sometime in the nineties, Illinois Central stopped using switch engines and started using road engines in the yard. After being asked about the difference between mounting these two types of engines, Kearn stated, "it's a difference between night and day. A switch engine has a bigger foot[,] well, it's easier to mount, it's safer to mount, and it's just meant for the yard I think."

¶76. We fail to see how this testimony violates FLIA, which merely preempts state law regulations and common law actions regarding locomotive design. Therefore, this claim has no merit.

## CONCLUSION

¶77. Having considered the arguments set forth by the parties in their briefs to this Court, and having carefully reviewed the record, we find that Illinois Central's arguments have no merit. Therefore, this Court affirms the jury verdict in favor of Hall in the amount of $1,501,907.97.

¶78. **AFFIRMED**.

**DIAZ, EASLEY AND RANDOLPH, JJ., CONCUR. SMITH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, P.J., AND CARLSON, J. WALLER, P.J., AND GRAVES, J., NOT PARTICIPATING.**

**SMITH, CHIEF JUSTICE, DISSENTING:**

¶79. The majority holds that the trial court did not err and accordingly affirms the verdict awarded for damages in favor of Hall for his broken leg and against Illinois Central ("ICR") in the amount of $l,50l,907.97. I find several issues in regard to the jury instructions and expert testimony which in my view constitute error by the trial court. Accordingly, I respectfully dissent.

¶80. First, in my view, the majority errs in upholding the trial court in its granting of Plaintiff's instruction P-1 and 10, which were fact-specific instructions that informed the jury of Hall's claims of negligence. This error is compounded by the trial court's denial of ICR's Jury Instruction D-13 and drastic modification of D-8(a), both of which were also fact-specific instructions containing ICR's theory of defense, duty of care, violation of ICR's safety rule T-740 and claims that it was Hall's negligence that caused this accident. To grant plaintiff's instructions but deny defendant's was blatantly unfair. The granting of Hall's aforementioned instructions without modification allowed the theory of the claim that inadequate walking conditions caused or contributed to Hall's accident, when Hall admitted he didn't know what caused his accident. The majority further compounds its error in holding that ICR's attempt to rely upon a violation of Safety Rule T-740 constituted negligence per se. That is simply not what ICR's instruction stated. Instead, the instruction merely allowed the jury to consider a violation of Safety Rule T-740 as one factor along with

34

any others they might find which may have contributed to negligence in causing this accident, thus assisting the jury in arriving at their verdict.

¶81. We have instructed trial courts that "jury instructions should be tied to the specific facts of the case and when given merely in abstract may be grounds for error." *A.B. McCarty v. Kellum, M.D.*, 667 So. 2d 1277, 1287 (Miss. 1995) (*quoting T.K. Stanley, Inc. v. Cason*, 614 So. 2d 942, 952 (Miss. 1992); *Estate of Lawler v. Weston,* 451 So. 2d 739, 741 (Miss. 1984); *Harkins v. Paschall,* 348 So. 2d 1019, 1023 (Miss. 1977); *Freeze v. Taylor,* 257 So. 2d 509, 511 (Miss. 1972)). The *McCarty* Court made clear that mere definition of the standard of care does not direct the jury to do anything and that jury instructions which relate abstract legal principles unrelated to the facts and issues of the case tend to mislead the jury. *Id.* In *Cason*, this Court held that such an abstract instruction should *not* be given on retrial. *Cason*, 614 So. 2d at 952. Further, in *Harkins*, we admonished the bench and bar that the use of an abstract instruction without application of the specific facts of the case under consideration invites reversible error. *Harkins*, 348 So. 2d at 1023.

¶82. Furthermore, in reviewing the granting or refusal of jury instructions, our "overarching concern is that the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it." *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992) (*quoting Rester v. Lott*, 566 So. 2d 1266, 1269 (Miss. 1990). We have held that both parties have the right to embody their theories of the case in the jury instructions provided there is testimony to support it, but only "if made conditional upon the

35

jury's finding that such facts existed." ***Reese v. Summers***, 792 So. 2d 992, 994 (Miss. 2001)(quoting ***Murphy v. Burney***, 27 So. 2d 773, 774 (Miss. 1946)).  By denying D-13 and drastically modifying D-8(a) to an abstract instruction, which merely defines the standard of care and wholly fails to instruct the jury to do anything, ICR's theory of the case was totally disallowed in the jury instructions.  Here, the defense was prohibited from presenting their theories via jury instructions, while the plaintiff's instructions were all granted.

¶83.    Next, I find myself at odds with the majority concerning the Plaintiff's expert Berquist.  First, in my view Berquist was not properly qualified under ***Daubert*** to testify as he did in this case regarding Hall's attempted mounting of the moving locomotive.  Berquist should not have been allowed to testify on this issue as he was not properly qualified as an expert on switching operations or the operation of safety rules governing the methods or procedures used in switching operations.  Berquist must be able to draw upon some special skill, knowledge, or experiences to formulate his opinion.  Examining Berquist's background, we find the record reveals that in 1960 he worked for Northern Pacific Railroad as a claims agent for two years.  Then he worked at Florida East Coast Railroad as a claims agent until 1973.  He never worked for another railroad.  He was never an engineer, conductor, switchman or utility man.  In 1973, he commenced work for Hastings and Goldman Law Firm as an investigator assigned to a unit at the firm that represented injured railroad employees, or FELA plaintiffs.  Since1982 he has worked as a self named, "railroad safety consultant."  He is not certified and holds no professional title, license, or certificate.  He has no formal training on railroad operations or safety rules and has never been tested on the

36

subject matter. More importantly, he has never attempted to mount a locomotive during switching operations. He neither performed an independent investigation of this accident nor examined the area of the yard where it occurred. In my view, in order to meet ***Daubert's*** prongs, Berquist must be experienced or have had advanced training qualifying him to render an expert opinion regarding mounting of a moving locomotive as it relates to the specific issues in the case at bar. General experience in a specialized field does not qualify a witness as an expert. This Court has held that an expert's testimony is not admissible unless the witness "possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." ***Nunnally v. R.J. Reynolds Tobacco Co.***, 869 So. 2d 373, 384 (Miss. 2004). In a FELA case, the Fifth Circuit Court of Appeals has held that general experience in one railroad field does not qualify one to testify as an expert in all railroad fields, especially **when the purported expert has no training, experience, or specialized knowledge whatsoever in the area of his proffered testimony.**" ***Edmonds v. Illinois Central Gulf Railroad Co.***, 910 F. 2d 1284, 1287 (5th Cir. 1990). Berquist's lack of education, formal training, or experience in mounting moving locomotives and rules concerning the same make him unqualified as an expert according to ***Daubert*** as well as M.R.E. 702.

¶84. The second prong of ***Daubert*** is not met either. Berquist is clearly advocating that a safer method of carrying out his job description existed for Hall (don't mount a moving locomotive), because a mere four other railroads out of 400 nationwide have stopped doing so. In fact, Hall could have checked his boots first, or called the engineer, as he had done

37

moments before, and slowed or stopped the train prior to mounting.  The Fifth Circuit Court of Appeals has addressed this issue of alternative procedure in a FELA case and held that "the task at which Mr. Soto was injured was one that could be done safely by the method which he was told to use and was using." ***Soto v. Southern Pacific Transp. Co.***, 644 F.2d 1147 (5th Cir. 1981); *see also* **Stillman** 811 F. 2d at 838 (where that court stated as I have previously herein, "the relevant inquiry was whether the railroad had exercised reasonable care, not whether the procedures used by the railroad could have been made safer.") ***Id.*** This Court should follow and apply here the decisions of the Fifth Circuit in ***Soto***.

¶85.    Further, Hall did not identify Berquist in response to interrogatories, though he did submit Berquist's report at a later date.  Although the report referenced railroads now issuing rules prohibiting the practice of mounting moving locomotives, it did not specifically state Berquist's opinion as to why these  railroads changed their rules. Berquist's view was that mounting moving locomotives at any speed is unsafe.   Even more critical  was the fact that Berquist's report did not reference a booklet published by FRA regarding statistical data of railroad accidents, yet he repeatedly testified regarding statistics from the booklet.  Hall failed to produce the documentation during discovery.  Berquist  certainly relied heavily upon it during testimony.  It was never offered, identified or introduced at trial.   We do not know for sure if in fact the  booklet exists.   Worse yet, as did the Plaintiff in ***Seymour***, Hall's expert identified a mere four railroads out of more than 400 operating nationwide in which an alternative method to ICR's Safety Rule T-740 was utilized.  Berquist's testimony strikes me as being nowhere close to a required, reasonable, railroad industry standard

38

regarding mounting of moving locomotives during switching operations. Nor does it reasonably identify this as an inherently unsafe practice that cannot be done in a safe manner. Standing alone, the facts supplied concerning Hall's 39-year career of safely mounting moving locomotives belie such a contention. Berquist's testimony is insufficient to establish ICR's negligence under FELA as a matter of law.

¶86. Finally, the trial court erred again in allowing testimony of Bubba Kern, Hall's co-worker, that it was easier to mount a switching locomotive than a general-purpose locomotive, the latter of the two being that which was used to switch cars in the yard at the time of this accident. Prior to trial, the court had properly granted ICR's motion in limine precluding testimony beyond FRA regulations governing train and locomotive designs and the purposes of their use. Developing and propounding specific regulations governing train design is a proper function only for FRA, and any claim related to the design and/or purpose of a train (including the one at issue here) is precluded by the Locomotive Inspection Act under FRA jurisdiction. *See* 49 U.S.C. 20701. The United States Supreme Court has considered this statute in ***Napier v. Atlantic Coast Line R.R. Co.***, 272 U.S. 605, 613; 47 S. Ct. 207, 71 L. Ed. 432 (1926) and held that Congress intended the LIA to "occupy the field" of locomotive equipment regulation. Thus, when a locomotive is in compliance with LIA, that locomotive is safe as a matter of federal law. *Id.* Here, Kern was allowed to testify, over ICR's objection, that the use of the general-purpose locomotive was unsafe because it was not a switching locomotive. This testimony put a new theory of negligence before the jury

which was not established in the pleadings and was not disclosed by Hall's responses to ICR's interrogatories. This error mandates a new trial.

¶87. Due to these substantial and prejudicial errors, I find that I cannot agree with the majority to uphold this verdict. These errors combined to cause extreme prejudice to ICR, which certainly did not receive a fair trial. This is especially egregious where the jury failed to consider the overwhelming evidence and law in finding no comparative negligence on the part of Hall.

¶88. I respectfully dissent.

**COBB, P.J., AND CARLSON, J., JOIN THIS OPINION.**