IRVING, J.,
 

 for the Court:
 

 ¶ 1. During a visit to Slippery Sam’s water park, Samantha Boyd sustained serious injuries to her mouth, including the loss of a tooth and the surrounding bone, while sliding down a water slide. Samantha’s parents, Jeff and Nancy Boyd,
 
 *458
 
 brought a premises-liability action in the Harrison County Circuit Court against Slippery Sam’s. Slippery Sam’s denied all allegations of negligence and moved for a directed verdict at the close of the Boyds’ case-in-chief. The circuit court granted Slippery Sam’s motion, finding that the Boyds had failed to prove the existence of a defect on the slide. Feeling aggrieved, the Boyds appeal and assert that the circuit court erred in directing a verdict for Slippery Sam’s and in excluding Nancy’s testimony regarding the condition of the slide and her conversation with a Slippery Sam’s employee the day after the accident.
 

 ¶ 2. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. On July 29, 2003, Samantha; Nancy; Samantha’s younger sister, Whitney Boyd; and Samantha’s cousin, Kimberly Rushing, visited Slippery Sam’s water park in Biloxi, Mississippi. The water park was owned and operated by Magic Golf, Inc.; however, the park was destroyed in 2005 by Hurricane Katrina, and the company dissolved in 2006.
 

 ¶ 4. When the family arrived at the park, Nancy took Whitney to the kiddy pool, and Samantha and Kimberly proceeded to the water slides. The water-slide area of the park consisted of three cement slides that discharged into a pool. Children used mats, which were provided by the park, to slide down the slides.
 

 ¶ 5. Samantha and Kimberly slid down the slides once or twice without incident. Then, the children proceeded to the middle slide. Kimberly went down first; she testified that she had passed over a rough dip that hurt her tailbone. Samantha slid down next and testified that she initially proceeded sitting up; however, she then flipped over onto her stomach and slid down with her head propped on her hands. Samantha testified that she went over an uneven dip in the middle of the slide that jolted her head and caused it to crash down onto the concrete slide. Her head struck with such force that one of Samantha’s permanent teeth was ripped from her mouth along with a significant portion of bone and gum tissue. Samantha had proceeded down the slide with her eyes closed, so she did not observe any defects in the slide. There were no eyewitnesses to the accident.
 

 ¶ 6. There were no lifeguards present at the top of the slides at the time of Samantha’s accident. Additionally, there were no signs showing how to use the slides properly. Cynthia Hood, a Slippery Sam’s representative, testified that company policy required the presence of lifeguards at the cement slides. These lifeguards were responsible for ensuring that the children went down the slides sitting upright on their mats. However, on the day of Samantha’s injury, the lifeguard stationed at the slides was on a break.
 

 ¶ 7. Nancy and Jeff visited Slippery Sam’s the following day to fill out an accident report. As Nancy filled out the report, she spoke to a Slippery Sam’s employee and inquired about the absence of a lifeguard at the slide. The employee stated that no lifeguard was needed at the top of the cement slides because a lifeguard was stationed at the bottom of the cement slides and at the top of a nearby fiberglass slide. After completing the accident report, Nancy walked the premises and inspected the cement slides. Nancy testified that she noticed a deep indentation at the bottom of the middle slide. While Nancy testified that she saw erosion at the bottom of the middle slide, both Samantha and Kimberly testified that the dip that caused Samantha’s injuries occurred in the middle of the slide.
 

 
 *459
 
 ¶ 8. Slippery Sam’s continued to operate the cement slides, including the slide where Samantha had sustained her injuries, on the day of the accident and for the remainder of the summer season. Hood testified that she inspected the slide to determine if there was any damage and noted none. Additionally, she testified that the lifeguards on duty at the slides were to slide down at the end of their shifts to check for defects. Hood admitted in her testimony that the park experienced a dozen or so injuries per year as a result of the slides. However, the injuries consisted of chipped teeth and other minor injuries.
 

 ¶ 9. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 10. A circuit court’s decision to grant or deny a motion for a directed verdict is reviewed de novo.
 
 Canadian Nat’l/Ill. Cent. R.R. v. Hall,
 
 953 So.2d 1084, 1090 (¶ 9) (Miss.2007). A motion for a directed verdict allows the moving party to challenge the legal sufficiency of the evidence presented.
 
 Id.
 
 In deciding whether to grant a defendant’s motion for a directed verdict, a circuit court must consider all the evidence in the light most favorable to the plaintiff along with all reasonable inferences that could be drawn from the evidence.
 
 Id.
 
 If the evidence so overwhelmingly favors the defendant that no reasonable juror could find for the plaintiff, only then should the circuit court grant the defendant’s motion for a directed verdict.
 
 Kennedy v. Ill. Cent. R.R.,
 
 30 So.3d 333, 335 (¶ 6) (Miss.2010).
 

 1. Directed Verdict
 

 ¶ 11. The Boyds argue that the circuit court erred in directing a verdict in favor of Slippery Sam’s because there was sufficient evidence to show that Slippery Sam’s had breached its duty of supervision by failing to have a lifeguard present at the top of the slide.
 

 ¶ 12. As a proprietor engaged in providing public amusement, Slippery Sam’s must exercise “a reasonable degree of watchfulness to guard against injuries likely to happen in view of the character of the amusement.”
 
 Spotlite Skating Rink, Inc. v. Barnes ex rel. Barnes,
 
 988 So.2d 364, 368-69 (¶ 12) (Miss.2008) (quoting
 
 Blizzard v. Fitzsimmons,
 
 193 Miss. 484, 491, 10 So.2d 343, 344 (1942)).
 

 ¶ 13. In
 
 Spotlite,
 
 a ten-year-old child fell and hit her head at a skating rink.
 
 Id.
 
 at 367 (¶ 2). The fall aggravated an undiagnosed medical condition, which ultimately resulted in the child’s death.
 
 Id.
 
 The child’s mother brought a wrongful-death action against the skating rink and alleged that the rink had breached its duty of supervision.
 
 Id.
 
 at 368 (¶ 8). At trial, an expert in recreational-facility management testified regarding the level of supervision required under industry standards.
 
 Id.
 
 at 367 (¶ 6). He testified that the skating rink could have prevented the child’s fall had it provided the appropriate level of supervision.
 
 Id.
 
 Based in part on the expert’s testimony, our supreme court found that the skating rink had breached its duty of supervision.
 
 Id.
 
 at 369 (¶ 6).
 

 ¶ 14. While the Boyds contend that their case is analogous to
 
 Spotlite,
 
 the Boyds presented no expert testimony regarding the level of supervision required in the water-park industry. Furthermore, they presented no evidence that the standard of care applicable to Slippery Sam’s required the presence of lifeguards at both the top and the bottom of the slides. Instead, the Boyds argue that because Slippery Sam’s elected to station a lifeguard at
 
 *460
 
 the slide, the absence of the lifeguard amounts to a breach of the standard of care. The standard of care attributable to business owners, even those engaged in providing public amusement, does not support the conclusory leap suggested by the Boyds.
 

 ¶ 15. Slippery Sam’s owed Samantha, a business invitee, a duty to maintain the water park in a reasonably safe condition, to warn of any known dangerous conditions not readily apparent to its patrons, and to conduct reasonable inspections of the premises.
 
 Pigg v. Express Hotel Partners, LLC,
 
 991 So.2d 1197, 1199-1200 (¶ 5) (Miss.2008). However, Slippery Sam’s is not required to insure against all injuries to invitees.
 
 Id.
 
 at 1199 (¶ 5). Therefore, to succeed in their premises-liability claim, the Boyds must prove that Slippery Sam’s acted negligently and breached one of the above-listed duties.
 

 ¶ 16. The Boyds failed to produce any evidence that Slippery Sam’s negligently maintained its water park. While Jeff and Nancy testified that they observed eroded concrete and missing paint on the slides, their testimonies and photographs related to the conditions at the
 
 bottom
 
 of the slide, not the middle where Samantha had sustained her injury. The company’s representative, Hood, testified that cracks would form in the cement slides as a result of exposure to high temperatures and running water. However, the water park repaired cracks at the start of the summer. Hood further testified that the lifeguards inspected the slides at the end of each shift by sliding down the slide and checking for defects. Therefore, there is no evidence that Slippery Sam’s negligently maintained its premises.
 

 ¶ 17. The Boyds also failed to produce any evidence that Slippery Sam’s failed to warn of known dangerous conditions not readily apparent to its patrons. In fact, the Boyds failed to establish that a dangerous condition existed. Samantha and Kimberly testified that as they went down the middle cement slide they felt a dip in the slide. Both children estimated that the dip existed in the middle portion of the slide, but neither child actually saw a defect in the slide. Kimberly testified that the water running over the slide hampered her ability to observe accurately the condition of the slide, and Samantha testified that she had gone down the slide with her eyes closed. Therefore, neither child could pinpoint the exact location of the dip or provide a description of the dip with any particularity. Jeff and Nancy testified that there was a dip at the bottom of the slide where the concrete had eroded; however, Samantha testified that her injury occurred at the middle of the slide, not the bottom. Hood testified that she personally inspected the slide following the accident and noticed no defects. She further testified that the slides continued to operate on the day of the accident and each day following the accident until the close of the season without incident. Therefore, there is no evidence that Slippery Sam’s failed to warn of a dangerous condition on its premises or that a dangerous condition existed at the time of Samantha’s injury.
 

 ¶ 18. Finally, there is no evidence that Slippery Sam’s failed to conduct reasonable inspections of the premises. Hood testified that the lifeguards stationed at the slides were responsible for inspecting the slides at the end of each shift. There is no evidence in the record that the lifeguards’ inspections were inadequate for detecting defects in the slides.
 

 1119. Without evidence that Slippery Sam’s failed to maintain its premises in a reasonably safe condition, warn of dangerous conditions, or perform reasonable inspections of the premises, the
 
 *461
 
 Boyds’ negligence claim must fail. The mere occurrence of a fall or other accident on a business premises is not sufficient to attribute negligence to the owner.
 
 Hardy ex rel. Hardy v. K Mart Corp.,
 
 669 So.2d 34, 38 (Miss.1996);
 
 Sears, Roebuck
 
 &
 
 Co. v. Tisdale,
 
 185 So.2d 916, 917 (Miss.1966). While there is no question that Samantha sustained a serious injury at Slippery Sam’s, the Boyds failed to present sufficient evidence that Slippery Sam’s acted negligently or that a defect even existed on the slide.
 

 ¶ 20. The evidence presented, even when viewed in the light most favorable to the Boyds and with all reasonable inferences, would not support a verdict in their favor because they failed to prove negligence on the part of Slippery Sam’s or produce evidence of a defect on the slide. Therefore, the circuit court did not err in granting Slippery Sam’s motion for a directed verdict. This issue is without merit.
 

 2. Exclusion of Nancy’s Testimony
 

 ¶ 21. The circuit court excluded Nancy’s testimony regarding the condition of the slides the day after Samantha’s accident and her discussions with a concession-stand employee regarding the absence of a lifeguard at the top of the slides. In excluding the testimony, the circuit court reasoned that Nancy’s testimony regarding her observations of the premises and discussions with a Slippery Sam’s employee the day after the accident lacked probative value, and even if the testimony had probative value, such value was far outweighed by the prejudicial effect.
 

 ¶ 22. The standard of review applied to a trial court’s decision to admit or deny evidence is abuse of discretion.
 
 Robinson Prop. Group, L.P. v. Mitchell,
 
 7 So.3d 240, 243 (¶ 9) (Miss.2009). However, we will not reverse a trial court’s decision “unless the error adversely affects a substantial right of a party.”
 
 Id.
 
 (quoting
 
 Whitten v. Cox,
 
 799 So.2d 1, 13 (¶ 27) (Miss.2000)).
 

 ¶ 23. The Boyds argue that Nancy’s observations of the water park the day following the accident were admissible as personal knowledge. “Any witness is competent to testify who has evidentiary facts within his personal knowledge, gained through any of his senses.”
 
 City of Ellisville v. Richardson,
 
 913 So.2d 973, 982 (¶ 41) (Miss.2005) (quoting
 
 Stratton v. Webb,
 
 513 So.2d 587, 590 (Miss.1987)). While Nancy certainly had personal knowledge regarding the condition of the slides at the water park, the circuit court limited her testimony because her observations did not occur on the day of the accident. Furthermore, the circuit court determined that the potential prejudicial effect of the testimony far outweighed any probative value and excluded the evidence pursuant to Rule 403 of the Mississippi Rules of Evidence.
 
 [1]
 
 Although the circuit court excluded Nancy’s testimony regarding the condition of the slides as unfairly prejudicial, it did not exclude Jeffs testimony regarding the condition of the slides or pictures of the slides taken by Jeff the day after the accident. We agree with the circuit court that Nancy’s testimony was inadmissible because it was based on observations made on the day following, not on the day of, the accident. However, we do not agree with the second basis given by the circuit court for excluding Nancy’s testimony. Nonetheless, we find that the circuit court did not err in excluding her testimony because, not only was it irrelevant, it was also cumulative and could have been excluded under Rule 403 on that
 
 *462
 
 basis. Based on these facts, we find that the circuit court did not abuse its discretion in limiting Nancy’s testimony regarding the condition of the slides, nor did the exclusion of her testimony result in prejudice or adversely affect any substantial right, especially where Jeffs testimony regarding the condition of the slides and his photographs were permitted.
 

 ¶ 24. The Boyds also argue that the circuit court erred in excluding Nancy’s testimony regarding her discussion with an unidentified Slippery Sam’s employee. The Boyds contend that the conversation qualified as an admission by a party opponent under Rule 801(d)(2) of the Mississippi Rules of Evidence and was not hearsay. In the alternative, the Boyds argue that the conversation qualified as an exception to the hearsay rules as a statement against interest.
 

 ¶ 25. While statements of a party or a party’s agent offered against the party are not hearsay, Mississippi Rule of Evidence 801(d)(2)(C) requires that such statements be made by individuals authorized to speak on the subject. Additionally, Rule 801(d)(2)(D) requires that statements made by a party’s employee must be made within the course and scope of the employment relationship. Based on the record, Nancy could not identify the employee she spoke to regarding the presence of lifeguards at the top of the slides. Furthermore, she testified that the employee worked at the concession stand. Therefore, it does not appear from the record that the provisions of Rule 801(d)(2) apply since the Boyds provided no proof that the employee was authorized to speak on the subject of where lifeguards should or should not be on duty. Furthermore, a statement regarding the presence of lifeguards would not fall within the scope of employment of a concession-stand employee.
 

 ¶ 26. Since Nancy’s conversation with the Slippery Sam’s employee does not qualify as an admission by a party opponent under Rule 801(d), it is hearsay and inadmissible unless an exception applies. The Boyds contend that the employee’s statement qualifies as a statement against interest under Rule 804(b)(3) of Mississippi Rules of Evidence. However, this exception requires that the witness be unavailable. Under Mississippi Rule of Evidence 804(a), a witness is not unavailable unless he: (1) is exempted from testifying on the ground of privilege, (2) refuses to testify despite a court order, (3) testifies to a lack of memory of the subject matter of his statement, (4) is unable to be present or testify because of death or illness, (5) “is absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means,” or (6) is a child whose emotional well-being would be “substantially impaired” if forced to testify. M.R.E. 804(a)(l)-(6). In this case, there is no evidence in the record that the Boyds attempted to procure the attendance of the employee who made the statement regarding the presence of lifeguards at the slides. In fact, Nancy could not even identify the employee by name. Therefore, the witness was not unavailable, and the exception to the hearsay rule for statements against interest does not apply.
 

 ¶ 27. Based on the record, the circuit court did not abuse its discretion by excluding Nancy’s observations of the slides the day after the accident and the hearsay statements of the Slippery Sam’s concession-stand employee. This issue lacks merit.
 

 ¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 
 *463
 
 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Rule 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the danger or unfair prejudice, ... [or is] cumulative.”