BARNES, J.,
for the Court:
¶ 1. This appeal involves a premises-liability negligence action filed by Reuben Smartt against IOC-Lula Inc. after he suffered injury from a slip and fall at the Isle of Capri Casino (IOC) in Coahoma County. The property is owned by IOC-Lula Inc. Smartt filed suit, claiming IOC was negligent by failing .to provide him with adequate warning of the wet-floor conditions at the casino’s buffet. After a trial, the jury returned a verdict in favor of Smartt for $251,000. The trial court denied IOC’s posttrial motions.
¶ 2. IOC appeals, arguing the jury verdict was against the weight of the evidence, and the trial court erred by failing to dismiss Smartt’s complaint due to his discovery violations.
FACTS AND PROCEDURAL HISTORY
¶3. On July 6, 2008, at approximately 10:26 a.m., Smartt entered the buffet area of the Isle of Capri casino. Smartt was a frequent visitor to the casino. The breakfast buffet closes at 10:30 a.m., and the lunch buffet does not open until 11:30 a.m. This hour-long window between services allows buffet employees time to clean the *458 area- and replace food. However, it is IOC’s policy to let casino patrons who already have food stay and finish eating.
¶ 4. The surveillance video shows an employee carrying a mop placing the first “wet floor” sign in the buffet area at 10:25:13 a.m. Smartt entered the buffet area at 10:26 a.m. He walked within six inches of this particular “wet floor” sign four times: at 10:26:46 a.m., 10:30:48 a.m., 10:41:42 .a.m., and 10:42:53 a.m. An employee placed a second “wet floor” sign in another area of the buffet at 10:42:40 a.m., near that entrance to the buffet. The video shows Smartt enter this area at 10:42:48 a.m. immediately before walking past the first “wet floor” sign for the fourth time. There is no indication that Smartt saw the second sign, as it was set out after he had entered that arda, and he did not walk past it at any point. The video also shows an employee carrying a third “wet floor” sign at 10:43:11 a.m,, but it'is unclear where this sign was placed’ in the buffet area. It appears from the surveillance video that it was placed on the opposite side of the buffet from where Smartt had been walking. An employee began' mopping the buffet area around 10:48 a.m. and, at approximately 11:01 a.m., finished mopping the entire buffet area. Smart fell shortly thereafter, directly at the entrance to the buffet that he had been accessing the entire time, and where there was no “wet floor” sign. Smartt was immediately given assistance by IOC’s employees and taken to the local hospital. He followed up with his doctor at home, and later required surgery to his neck (cervical fusion of the C5 and C6).
¶ 5. Smartt filed suit on June 24, 2011, alleging that IOC was negligently liable for failing to warn of a dangerous condition and that he suffered serious injury as a result of IOC’s negligence. He requested damages in the amount of “500,000 or such other amount that is fair and reasonable[.]” IOC filed a motion for summary judgment on February 24, 2014, and a motion to dismiss on March. 4, 2014, alleging that Smartt had made “willful, material misrepresentations through discovery about his prior medical history ... in an attempt to conceal the truth[.]”
¶ 6. After a hearing on the motions, the trial' court denied IOC’s motion for summary judgment on March 24, 2014, concluding that whether the warning signs posted by IOC “were adequate is a factual issue for a jury to decide.” The trial court also denied IOC’s motion to dismiss, but agreed that Smartt’s failure to disclose his prior injuries was in bad faith, and it issued Smartt a $1,000 sanction and ordered payment of fees associated with the filing of the motion. The court subsequently entered an order, clarifying its previous order and imposing additional sanctions, which limited Smartt’s damages “to medical, drug, • and -related expense, loss of wages, future.medical expenses, and mental and emotional distress,” and excluding evidence of “wage-earning capacity and future earnings.” At the start of the trial, the trial court imposed an additional sanction, placing a $250,000 cap on noneconomic damages.
¶ 7. A jury trial was held on March 26-27, 2014. At trial, IOC’s risk manager, Daniel Burt, testified that there were at least five “wet floor” signs, possibly six, placed in the buffet area that day. Burt testified that the corridor where the first warning sign was placed arid where Smartt fell was one straight line, and that Smartt fell approximately eight to ten feet from the sign. Smartt testified that he never saw a sign near where he fell, nor did he see anyone mopping. Surveillance-video evidence supports both witnesses’ testimony. Smartt took the same linear path through the buffet and passed the first *459 “wet floor” sign -four times. The second and third warning signs were later placed outside of Smartt’s path, and mopping the buffet area occurred after he left the buffet the second time and had concluded when he attempted to, reenter the buffet area and fell. Smartt , did admit that “to be honest, I didn’t, uh, pay any attention [to] it. I was just going to and from, like I say, the regular routine back and forth from the buffet.” He also acknowledged that he had walked by a sign, but did not “pay[] any attention.” Essentially, he noted that activities like the employees mopping and bussing tables were routine things, so he was not “focused on any of that.” (The video does not show where Smartt was sitting in relation to the mopping.)
¶ 8. The- jury awarded Smartt $151,000 in compensatory damages and $100,000 in noneconomic damages. IOC filed a motion for a judgment notwithstanding the verdict and a motion for a new trial or, in the alternative, a remittitur. The trial judge denied the motion, and IOC now appeals.
DISCUSSION
I. Whether the verdict was against the overwhelming weight of the evidence.
¶ 9. IOC claims that the jury’s verdict was against the overwhelming weight of the evidence. It contends that based on the evidence of the surveillance video and testimony presented at trial, “it is clear that the jury held IOC to a standard of care above and beyond reasonabléness, bordering on strict liability.”
¶ 10. “In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict .and will reverse only when convinced that the circuit court has abused its discretion in failing to-grant a new trial.” Breaux v. Grand Casinos of Miss., Inc-Gulfport, 854 So.2d 1093, 1098 (¶ 14) (Miss.Ct.App.2003) (quoting Herrington v. Spell, 692 So.2d 93, 103 (Miss.1997) (overruled on other grounds)). In cases where the verdict is in the appellee’s favor, “this Court will resolve all evidentiary conflicts in the appellee’s favor and will draw all reasonable inferences which flow from the testimony given in. favor of the appellee,” Id. (quoting Sw. Miss. Reg’l Med. Ctr. v. Lawrence, 684 So.2d 1257, 1267 (Miss.1996)). Therefore, “unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice,” we will not set aside the jury’s verdict. Id.
¶ 11. Mississippi courts conduct an analysis of three factors to ascertain whether a property owner is liable to an injured, party in a prémises-liability case: “(1) the injured party’s classification as an invitee, licensee, or trespasser at the time he or she was injured; (2) the duty owed by the defendant to the injured party; and (3) whether the defendant breached that duty.” Sawvell v. Gulfside Casino, Inc., 158 So.3d 363, 366 (¶6) (Miss.Ct.App.2015) (citations omitted). The parties have stip-: ulated that Smartt was an invitee on IOC’s premises.
¶ 12. “A business owner/operator owes to invitees the duty to keep the premises reasonably safe, and when' not reasonably safe, to warn only where there is hidden danger or peril that is not in plain and open view.” Dickinson v. Vanderburg, 141 So.3d 455, 457 (¶ 7) (Miss.Ct.App.2014) (quoting Rod v. Home Depot USA, Inc., 931 So.2d 692, 694 (¶ 9) (Miss. Ct.App.2006)). However, a business owner .“is not required to insure against all injuries to invitees.” Boyd v. Magic Golf, Inc., 52 So.3d 455, 460 (¶ 15) (Miss.Ct.App.2011). “The mere occurrence of a fall or *460 other accident on a business premises is not sufficient to attribute negligence to the owner.” Id. at 461 (¶ 19).
¶ 13. Moreover, as this court noted in Thompson v. Chick-Fil-A, Inc., 923 So.2d 1049, 1052 (¶ 10) (Miss.Ct.App.2006):
There is no duty to warn of a defect or danger which is as well-known to the invitee as to the landowner, or of dangers that are known to the invitee, or dangers that are obvious or should be obvious to the invitee in the exercise of ordinary care. Grammar v. Dollar, 911 So.2d 619, 624 (¶ 12) (Miss.Ct.App.2005). Additionally, the owner of a business does not insure the safety of its patrons. Rather, the owner of a business owes a duty to an invitee to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or to warn of dangerous conditions not readily apparent, which the owner or occupant knows of, or should know of, in the exercise of reasonable care. Robinson v. Ratliff, 757 So.2d 1098, 1101 (¶ 12) (Miss.Ct.App.2000).
IOC acknowledges that it created the condition (mopping and cleaning) that led to Smartt’s slip and fall. Smartt does not deny that warning signs were posted. Nor does he deny that he walked by the same “wet floor” warning sign four times. Rather, he claims that the warnings were inadequate, as the first “wet floor” sign was posted twenty to thirty minutes prior to the dangerous condition being created.
¶ 14. IOC cites Frazier v. McDonald’s Restaurants of Mississippi, Inc., 102 So.3d 341 (Miss.Ct.App.2012), to support its claim that its warning signs at the buffet were adequate. In Frazier, the plaintiff slipped and fell on a freshly mopped floor after she walked by a “wet floor” sign. We concluded:
Frazier did not show any genuine issues of material fact that McDonald’s failed to keep its premises reasonably safe. McDonald’s had taken reasonable care when it mopped. Periodic mopping of a heavy-traffic, drink-dispenser area is a necessary and reasonable precaution by a restaurant. Others did not fall when they walked over the same area before >and after Frazier’s fall. Placement of warning signs was also reasonable care. McDonald’s also had a duty to warn of hidden dangers, such as a freshly mopped floor. McDonald’s complied with its duty to warn by the placement of signs at each end of the mopped area. Frazier walked around the first sign and fell on the second sign. The video in the record, attached to the motion for summary judgment and the response, clearly showed the presence of the signs and Frazier’s walk by the first sign toward the second sign. She produced no “significant and probative evidence” that the signs were hidden or inadequate.
Id. at 345 (¶¶ 24-25). Smartt distinguishes Frazier, noting that the signs in that case were put out after the floor was already wet. Here, the floor was dry when Smartt walked by the sign. He stated that if it had been wet, “maybe I would have [fallen] before I fell the time I reached for the fruit.... And if an indication of wet, I mean, my feet would have slipped or whatever, like they did when I reached for the fruit.”
¶ 15. Burt, however, testified that “the ‘wet floor’ sign serves many purposes, like warning it could be something on the floor while we are doing this changeover.” It was Burt’s testimony, and the distinguishing factual circumstances in Frazier, that prompted the trial court to deny IOC’s motion for summary judgment, claiming the evidence created a genuine issue of material fact regarding whether the warn *461 ing signs placed by IOC were adequate. While Smartt admitted that he really did not pay attention to the sign, or to the employees mopping the area, the- jury heard the testimony and the evidence and concluded that the. signs posted by IOC were not adequate to warn Smartt of the dangerous condition (i.e., the wet floor).
¶ 16. In its order denying IOC’s motion for a new trial, the trial judge stated that “[gjiven the evidence presented at trial, a reasonable, hypothetical juror could have concluded that IOC failed in its duty to adequately warn Smartt of the wet floor.” As already noted, the surveillance video shows that Smartt did indeed walk by the first “wet floor” sign four times, prior to the floor being mopped. However, there is no indication from the video evidence that Smartt ever saw the second or third signs. The second sign was placed at a second buffet-entrance location and did not appear to be in Smartt’s line of vision. Rather, he passed on the other side of the buffet area and went back to his table a few minutes before the employee began mopping the area. The third sign appears to have been placed on the opposite side of the buffet from-'the first sign and was not in an area that Smartt used to access the buffet.
¶ 17. Therefore, the only warning sign Smartt encountered was the first ‘Vet floor” sign, which was placed in position almost twenty minutes before the mopping began. Therefore, the floor was dry when he passed the sign on those four occasions. After the area had been mopped, no sign was placed at the'buffet entrance that Smartt had been using for the previous thirty minutes. The closest sign to Smartt when he fell was the first sign he had passed four times while the floor was dry, located several feet from the entrance. There is no evidence that Smartt saw the employee mopping; he was already seated at his table before the mopping began. There is no evidence as to the location of Smartt’s table in relation to the mopping.
■ ¶ 18. Based, on our standard of review, which involves “resolv[ing] all evidentiary conflicts .in the appellee’s favor,” we can find no error in the jury’s verdict.[1] Jurors could have reasonably concluded that the placing of the first sign .twenty minutes before the hazardous condition was created undercut the value of the sign. A patron, such as Smartt, might well have concluded that mopping was finished and the hazardous condition resolved. Further, the jury could have reasonably concluded .that IOC failed to . place adequate signs in that it did not place one at the buffet entrance accessed by Smartt. .••.
II. Whether the trial court committed reversible error by not dismissing the suit for Smartt’s will- ’ ful discovery violations.
¶ 19. During his February 24, 2012 deposition, IOC’s. counsel asked Smartt: “So in the last [ten] years, other than your Achilles si work and then your injuries that you claim you sustained at the Isle of Capri, other than that, are those the only injuries you’ve had in the last [ten] years?” Smartt replied: “Yes.” However, IOC later obtained medical records from the Huntsville Hospital, which showed that on April 16, 2008, two months before his fall, Smartt requested an x-ray of his back because his neck began hurting. At trial, Smartt also listed four other physicians he had seen foi: his neck issues. He said one, Dr. Curt Freudenberger, did a cervical fusion in his neck. ‘ There were also numerous (approximately twenty-nine) work-related injuries in the years leading up to the fall, some of which in *462 volved body areas not relevant to the injury at issue'. Yet Smartt only disclosed the one involving his Achilles tendon during discovery.
¶20. IOC moved to dismiss the suit based on Smartt’s willful discovery violations. The trial court denied the motion, holding that while Mississippi’s appellate courts have “repeatedly up[held] dismissal for discovery violations,” it “believe[d] that a monetary sanction [was] appropriate.” It imposed a $1,000 fine and attorney’s fees on the motion filed by IOC. The court later amended the order, ruling that Smartt’s damages were limited “to medical,- drug, and related expense, loss of wages, future medical expenses, and mental and emotional distress” and evidence of “wage-earning capacity and future earnings” was to be excluded.
¶21. Later, during a pretrial motion hearing, IOC’s counsel argued:
I would simply note — and I understand that the Court may or may not have known this at the time — that the additional sanction that has been levied, in essence, is not a sanction. And what I mean is, from a practical standpoint, they áre hot making a wage[-]earnirig capacity claim, and they are not making a claim for future earnings.
And obviously, the Court did not dismiss • the case.
The trial court, after further discussion with the parties’ counsel, levied further sanctions and capped the noneconomic damages at $250,000.
- ¶ 22. IOC argues on appeal that Smartt’s “willful, material misreprer sentations about his .prior medical history” warranted dismissal under Mississippi Rule of Civil Procedure 37. However, our supreme court has held:
Under Rule 37, options available to every trial court for failure to cooperate in discovery span from payment of reasonable expenses and attorneys’ fees, to ordering designated facts to be taken as established, to “refusing to allow the disobedient party to support or oppose designated claims or defenses,” to striking out pleadings, to holding a party in contempt of court, to dismissing the suit. All are permissible, and all are within the trial court’s discretion.
Ashmore v. Miss. Auth. on Educ. Television, 148 So.3d 977, 983 (¶ 19) (Miss.2014) (quoting M.R.C.P. 37).' Therefore, trial courts have the “discretionary authority to sanction, including the authority to dismiss an action” under Rule 37. Id. at 981 (¶ 10). “Dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his or her claim, and is reserved for the most egregious cases, usually where clear delay and ineffective lesser sanctions are present.” Harvey v. Stone Cty. Sch. Dist., 862 So.2d 545, 549 (¶ 8) (Miss.Ct.App.2003) (citation omitted).
¶ 23. In Conklin v. Boyd Gaming. Corporation, 75 So.3d 589 (Miss.Ct.App.2011), our Court affirmed a trial court’s dismissal of an action due to the plaintiffs false statements regarding prior leg problems that had occurred before his accident. Noting bur holding in Conklin, the trial judge in this case fully considered the misrepresentations made by Smartt concerning his prior injuries and concluded that lesser sanctions would be appropriate. IOC has cited no authority that dismissal is a required sanction in a case such as this. Furthermore, IOC suffered no prejudice from the misrepresentations, as they were revealed prior to trial, and IOC was allowed to cross-examine Smartt regarding these medical issues. Accordingly, we find the trial court was within its discretion to *463 impose monetary sanctions, rather than dismiss the case in its entirety.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. The record reflects that only one juror voted in IOC's favor.