# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00187-COA

BARRY BICKES                                                    APPELLANT

v.

ANGIE SWAIN AND THE ANTLER, LLC                                APPELLEES

DATE OF JUDGMENT:            01/31/2024
TRIAL JUDGE:                 HON. PAUL S. FUNDERBURK
COURT FROM WHICH APPEALED:   LEE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JOE M. DAVIS
ATTORNEY FOR APPELLEES:      GAYE NELL CURRIE
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 AFFIRMED - 05/20/2025
MOTION FOR REHEARING FILED:

### BEFORE CARLTON, P.J., WESTBROOKS AND EMFINGER, JJ.

### EMFINGER, J., FOR THE COURT:

¶1.     Barry Bickes filed a complaint in the Lee County Circuit Court against Angie Swain

and The Antler LLC following an injury Bickes suffered while attending Swain's daughter's

wedding at The Antler event venue. Bickes alleges that his injury was proximately caused

by Swain's and The Antler's negligence. Aggrieved by the trial court's decision to grant a

motion for summary judgment filed by Swain and The Antler, Bickes appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     Prior to her daughter's wedding, Swain toured the premises of The Antler event venue

in Tupelo, Mississippi. During her tour, Swain did not observe any dangerous conditions or

anything that would pose a threat to the wedding attendees. Swain subsequently signed a

contract to reserve the location for the upcoming wedding. The contract to rent the venue

required Swain to provide security personnel during the event if she intended to serve alcohol. Security personnel would watch over the guests and assist them in the parking lot of the premises. Sansone Security was ultimately retained through The Antler to fulfill this requirement.

¶3. Bickes attended Swain's daughter's wedding held at The Antler on April 27, 2019. Bickes' daughter was also a bridesmaid in the wedding. Upon Bickes' arrival, he and his guest were unable to find a seat inside the venue. The two of them, along with multiple other attendees, were directed through a set of French doors to an outside deck that served as an extension to the indoor seating area. These guests were able to view the ceremony through the open doors.

¶4. Following the ceremony, an unidentified individual announced that the wedding reception was being held next door in a building adjacent to the deck where Bickes and the overflow guests were seated. The guests began to exit the deck via both a sidewalk leading from the side of the deck to the reception area and through the French doors, through which they had initially entered the deck.

¶5. Instead of waiting for the guests ahead of them to exit through the French doors or down the sidewalk, Bickes and his guest chose an alternate route to the reception. During his deposition, Bickes admitted that he made the decision on his own accord to take a shortcut by stepping off the side of the deck onto the grass. Bickes' guest stepped off first without incident. Bickes followed behind her and stepped down with his left foot. However, when Bickes stepped off the deck, he claims he "had this enormous shooting pain and . . .

blacked out." Bickes stated that when he woke up, he was lying on his back. One of the security personnel, who happened to be a paramedic, called 911. A local volunteer fire department responded first, followed by an ambulance. Bickes was transported to the emergency room (ER) via ambulance.

¶6.     At the ER, doctors attempted to "reset" Bickes' foot several times but were unsuccessful. A specialist was called in to reset his foot and temporarily cast it with instructions to follow up with an orthopedic surgeon. Bickes personally purchased a three-wheel knee trike from Amazon to assist him with mobility for several months while waiting on his appointment with the surgeon.

¶7.     Bickes first met with an orthopedic surgeon in February 2020. During this visit, the temporary cast was removed and another cast was put on. Bickes was instructed to return in three weeks for a follow up, and x-rays were taken at that time. Bickes was placed in another cast and told to follow up in another five weeks. The only additional instructions were to elevate the ankle and take Tylenol or prescribed pain medication as needed. Bickes also attended regular physical therapy sessions as prescribed.

¶8.     In November 2020, Bickes returned to this doctor with complaints of swelling and continued pain in his ankle. The doctor ordered an MRI and told Bickes that "it looked like two of the tendons that go around your ankle [are] broke[n]." The only option Bickes was given was to have surgery for repair. Following surgery, Bickes was placed back in a series of casts and prescribed physical therapy. This time, Bickes did not attend physical therapy as prescribed due to the pain and his ability to do the exercises from home.

¶9.    Bickes claims that he began having issues with his right knee around this time. According to Bickes, the same doctor told him that his knee pain was due to his knee overcompensating for his injured ankle. Bickes saw two additional doctors concerning his knee pain. Upon receiving an MRI of his knee, it was determined that he had a torn meniscus. Bickes received several injections in his knee at two-week intervals without relief. In February 2022, Bickes had surgery to repair his meniscus. Although the surgery was deemed a success, Bickes did not find relief. He was referred to another orthopedic surgeon, who recommended a full knee replacement due to arthritis that had set in behind the meniscus.

¶10.    On April 20, 2022, Bickes filed a complaint against Swain and The Antler. After filing his complaint, Bickes underwent the recommended knee replacement surgery in November 2022. After undergoing several months of physical therapy following surgery, Bickes was released from treatment in March 2023. However, Bickes claimed that he has continuous pain in both his ankle and knee that prevents him from working, hunting, and fishing.

¶11.    After depositions were complete, Swain and The Antler filed their joint motion for summary judgment on September 18, 2023. An agreed order setting the motion for summary judgment was entered, and a hearing was set for February 2, 2024. However, finding that the matter had been fully briefed and was ripe for review without the necessity of a hearing, the judge entered an order granting the motion on January 31, 2024. Aggrieved by the trial court's order, Bickes appealed.

## STANDARD OF REVIEW

¶12. In *McKinley v. Lamar Bank*, 919 So. 2d 918 (Miss. 2005), the Mississippi Supreme Court outlined the standard for appellate review of rulings on summary judgment motions:

> We thus apply a de novo standard of review concerning the propriety of a trial court's grant or denial of summary judgment. *Montgomery v. Woolbright*, 904 So. 2d 1027, 1029 (Miss. 2004); *Brown ex rel. Ford v. J.J. Ferguson Sand & Gravel Co.*, 858 So. 2d 129, 130 (Miss. 2003); *Armistead v. Minor*, 815 So. 2d 1189, 1191-92 (Miss. 2002); *Richardson v. Methodist Hosp.*, 807 So. 2d 1244, 1246 (Miss. 2002). We recently discussed our responsibilities in reviewing cases involving summary judgments:
>
> > We apply a de novo standard of review of a trial court's grant or denial of a motion for summary judgment. *Satchfield v. R.R. Morrison & Son, Inc.*, 872 So. 2d 661, 663 (Miss. 2004); *McMillan v. Rodriguez*, 823 So. 2d 1173, 1176-77 (Miss. 2002); *Lewallen v. Slawson*, 822 So. 2d 236, 237-38 (Miss. 2002); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001). . . . **Accordingly, just like the trial court, this Court looks at all evidentiary matters in the record, including admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.** *Id*. at 70. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. *Id*. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. *Id*. When a motion for summary judgment is made and supported as provided in Miss. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of the pleadings, but instead the response must set forth specific facts showing that there is a genuine issue for trial. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). If any triable issues of fact exist, the trial court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Id*. at 304.

*McKinley*, 919 So. 2d at 925 (¶13) (emphasis added) (quoting *Harrison v. Chandler-Sampson Ins. Inc.* 891 So. 2d 224, 228 (¶11) (Miss. 2005)).

## ANALYSIS

5

¶13.    Bickes first argues on appeal that the trial court abused its discretion when it granted Swain and The Antler's motion for summary judgment by relying solely on the briefs without having the hearing that had been agreed to by the parties.  Further, Bickes argues that the trial court erred in designating Bickes as a licensee instead of an invitee on the property.

¶14.    In its order granting the motion for summary judgment, the trial court reasoned:

> As to The Antler, Plaintiff was a licensee.  The Antler received no benefit from Plaintiff.  It was rented by Swain.  Plaintiff presents no evidence that his presence *vel non* impacted the rental fee Swain paid to The Antler.  Similarly, Swain received no benefit from Plaintiff's presence.  He was there to watch the wedding – in other words, for his own benefit, pleasure, and convenience. Even if he were initially an invitee, he exceeded the invitation by stepping down into an unmarked/undesignated area rather than exiting through the venue.  *See Hoffman v. Planters Gin Co., Inc.*, 358 So. 2d 1008, 1011 (Miss. 1978).  The duty owed to a licensee is to avoid willfully or wantonly injuring him, which requires more than inadvertence, lack of attention, or "passive negligence."  *Id*. at 1012-13.  There is no evidence Defendants engaged in any kind of active negligence.  Plaintiff testified the area was well-lit, the grass was freshly mowed, and Plaintiff had no recollection of any holes.

> Finally, even if Plaintiff were an invitee still within the invitation, the premises were "reasonably safe" and there were no hidden dangers or perils that needed a warning.  "The mere occurrence of a fall or other accident on a business premises is not sufficient to attribute negligence to the owner."  *Boyd v. Magic Golf, Inc.*, 52 So. 3d 455, 461 (Miss. Ct. App. 2011).  There is no evidence of any dangerous condition.  Even assuming a dangerous condition existed, there is no evidence Defendants created it, knew about it, or should have known about it.

> Regarding Swain, Plaintiff alleges she failed to take active steps to mitigate dangerous conditions on The Antler's premises and that someone under her authority instructed Plaintiff to exit the wooden deck as he did.  As noted above, the Court finds Plaintiff has failed to show a dangerous condition.  He also testified that he chose to step off the deck of his own volition and could not identify anyone telling or instructing him to do so.

> **A.      Did the trial court err by granting the motion for summary judgment without first conducting the hearing that had been**

6

**scheduled?**

¶15. While Bickes argues that the trial court erred in granting the motion for summary judgment without a hearing, Bickes' right to a hearing on the motion was not absolute. *Pope v. Martin*, 354 So. 3d 362, 374 (¶34) (Miss. Ct. App. 2023). In *Pope*, this Court held:

> Caselaw has explicitly stated that there is no right to a hearing on a summary judgment motion. The Mississippi Supreme Court has held, "Rule 56 of the Mississippi Rules of Civil Procedure neither explicitly nor implicitly provides the right to a hearing on a motion for summary judgment." *Tunica County v. Town of Tunica*, 227 So. 3d 1007, 1026 (¶46) (Miss. 2017) (citing *Adams v. Cinemark USA Inc.*, 831 So. 2d 1156, 1162 (¶34) (Miss. 2002), *superseded by* M.R.C.P. 78). Motion practice, which generally is governed by Rule 78, no longer implies a right to a hearing on a summary judgment motion.

*Id*. Bickes filed a response to the summary judgment motion and also filed a memorandum in support of his position. As such, the trial court was well within its discretion in ruling on the pending motion for summary judgment without a hearing. This issue is without merit.[1]

> **B.  Did the trial court err in classifying Bickes as a licensee rather than an invitee, and did this distinction impact the outcome of the summary judgment motion?**

¶16. The trial court's order discussed the different duties owed to a licensee versus an invitee, and the court further explained the possible outcomes given the specific facts in this case. While the trial court ultimately found that Bickes was a licensee, the trial court's order

---

[1] We must note that pursuant to Mississippi Rule of Civil Procedure 6(d), affidavits in opposition to a motion for summary judgment "may be served not later than one day before the hearing" unless otherwise ordered by the court. In his response to the motion for summary judgment, Bickes did not attach any affidavit and did not refer to any affidavit he intended to file before the scheduled hearing. Further, Bickes did not seek relief from the order granting summary judgment under Mississippi Rules of Civil Procedure 59 or 60 and did not suggest on appeal that he was prevented from filing an affidavit in accordance with Rule 6(d) due to the trial court's ruling.

held that regardless of Bickes' classification, "the premises were reasonably safe, and there were no hidden dangers or perils that needed a warning."[2]

¶17.    In *Landry v. Vallman McComb Mall LLC*, 369 So. 3d 616, 620 (¶19) (Miss. Ct. App. 2023), this Court stated:

> "Premises liability is a 'theory of negligence that establishes the duty owed to someone injured on a landowner's premises as a result of "conditions or activities" on the land[.]'" *Thomas* [*v. Boyd Biloxi*], 360 So. 3d [204,] 213 (¶33) [(Miss. 2023)](quoting *Johnson v. Goodson*, 267 So. 3d 774, 777 (¶11) (Miss. 2019)).  A business "owner . . . is 'only liable for injuries caused by a condition that is unreasonably dangerous.'" *Overpeck v. Roger's Supermarket LLC*, No. 1:12-cv-124-SA-DAS, 2013 WL 4500469, at *2 (N.D. Miss. Aug. 21, 2013) (quoting *Parker v. Wal-Mart Stores Inc.*, 261 F. App'x 724, 725-26 (5th Cir. 2008) (unpublished)).

Further, in *Carroll v. Singing River LLC*, 309 So. 3d 567, 570 (¶7) (Miss Ct. App. 2020), this Court explained:

> As our caselaw clearly establishes, for a premises-liability claim to succeed, a dangerous condition must first exist. *See id*. . . . "**[A] property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists**." *Id*. (citations omitted).

(Emphasis added).  Likewise, in *Penton v. Boss Hoggs Catfish Cabin LLC*, 42 So. 3d 1208, 1210 (¶10) (Miss. Ct. App. 2010), this Court also held that "the existence of a dangerous condition cannot be shown merely because an accident occurred."

¶18.    In the case at hand, the record does not include any pictures of the deck as it looked on the day of the wedding.  There are no expert opinions consistent with Bickes' position that

---

[2] While this Court finds that Bickes was an invitee rather than a licensee, we agree with the trial court that Bickes' classification is of no consequence under the facts of this case.  *See Martin v. Trustmark Corp.*, 292 So. 3d 245, 248 (¶11) (Miss. Ct. App. 2019) ("Because the threshold that Martin fell over was not a dangerous condition, we need not address the parties' arguments about Martin's status at the time of her fall.").

the deck was dangerous. There were pictures of the deck attached to Bickes' deposition; however, those pictures were not included in the trial court record or the record on appeal. While Bickes' deposition testimony was conflicting, he ultimately testified that it was daylight when he fell, the grass appeared to be freshly cut, the ground where he stepped off was "kind of flat," and he did not recall seeing any holes in the ground. Bickes also admitted that it was his decision alone to step off the deck, and he made that quick decision to avoid the wedding crowd trying to move to the reception area. Bickes seems to hang his hat on the fact that approximately two years after the incident, The Antler made renovations to the deck after the owner noticed "some wear on some of the top boards." However, nothing in the record indicates that the renovations made to the deck had anything to do with Bickes' allegations that the deck was not safe. The record is completely void of any evidence that either Swain or The Antler was aware of any possible dangerous condition on the premises on the day of the wedding or that any dangerous condition existed at all. Given the absence of any evidence in the record that there was a dangerous condition present at The Antler on the day of the incident, neither Swain nor The Antler breached any duty to Bickes.

## CONCLUSION

¶19. After reviewing the record, we find that Bickes failed to demonstrate any genuine issue of material fact for trial, *see* M.R.C.P. 56(c), and, therefore, we affirm the trial court's order granting Swain's and The Antler's motion for summary judgment.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., LAWRENCE, McCARTY AND ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY**

9

**WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. WEDDLE, J., NOT PARTICIPATING.**